**SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS AND ITS AFFILIATED LOCAL 1184, Plaintiffs,**

v.

**Arnold E. ORDMAN, General Counsel, National Labor Relations Board, Defendant.**

**Civ. No. 70–603–HP.**

United States District Court, C. D. California.

Sept. 22, 1970.

As Corrected Nov. 9, 1970.

**634**

Lionel Richman of Richman & Garrett, Los Angeles, Cal., for plaintiff.

Abigail Baskir for Marcel Mallet-Prevost, National Labor Relations Board, Washington, D. C., Daniel J. Harrington, Regional Attorney, Region 21, Los Angeles, Cal., for defendant.

## MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

PREGERSON, District Judge.

On July 8, 1970, plaintiffs filed motions for judgment on the pleadings and for summary judgment. On August 17, 1970, defendant filed his motion for summary judgment. Oral argument was held on August 24, 1970, with Lionel Richman of Richman and Garrett appearing for plaintiffs and Abigail Baskir appearing for defendant. Following oral argument, the motions were submitted for the Court's decision pursuant to Rule 3(d) of the Local Rules of the Court.

Plaintiffs are labor organizations within the meaning of Section 2(5) of the National Labor Relations Act of 1947, 29 U.S.C. § 152(5). On January 2, 1970, they filed unfair labor practice charges with the National Labor Relations Board alleging that Christiana Western Structures, Inc., had violated Section 8(a) (1), (2), and (3) of the Act, 29 U.S.C. § 158(a) (1), (2), and (3), by entering into a collective bargaining agreement containing a union security clause with United Furniture Workers of America, AFL-CIO, Local 1010, which was not the representative of the employees covered by the agreement. In fact, at the time the agreement was executed, Christiana had no employees who would have been subject to the agreement.

On January 27, 1970, the Regional Director of the Board dismissed plaintiffs' charges on the ground that they had not been filed and served within six months of the signing of the agreement and were, therefore, barred by Section 10(b) of the Act, 29 U.S.C. § 160(b). That section provides that "* * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made. * * *" The Regional Director's dismissal of plaintiffs' charges was sustained by defendant. Thereupon, plaintiffs brought this action for a declaration that in the case of an agreement between an employer and a union, the six month period of § 10(b) does not commence until there are employeees subject to said agreement, and for an order directing defendant to consider plaintiffs' charges upon the merits.

Defendant contends that its dismissal of plaintiffs' charges under § 10(b) is compelled by Local Lodge No. 1424 v. NLRB, (Bryan Mfg. Co.), 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). In that case, the Court was concerned with unfair labor practice complaints alleging that the employer entered into a collective bargaining agreement with a union which at the time of execution did not represent a majority of the existing em-

ployees. Although the agreement had been executed more than six months prior to the filing and service of charges, the Board held that the maintenance of the agreement in force was a continuing violation of the Act and the complaints were, therefore, not barred by the limitations proviso of § 10(b).

In reversing, the Supreme Court observed that "* * * the Board's position would withdraw virtually all limitations protection from collective bargaining agreements * * * [f]or, once the principle on which the decision below rests is accepted, so long as the contract—or any renewal thereof—is still in effect, the six-month period does not even begin to run." Id. at 425, 80 S.Ct. at 831. Thus, if the Board's decision in *Bryan* had been allowed to stand, a collective bargaining agreement might have been subject to attack for years after it was executed and first applied to employees. Because of the destabilizing effect the Board's ruling would have had on the collective bargaining process, the Court held that the limitation period of § 10(b) commenced with the execution of the *Bryan* agreement.

*Bryan,* however, presented a different case from the one before this Court. In *Bryan,* the company already had employees at the time the collective bargaining agreement was executed. Thus, covered employees could have filed charges against the agreement immediately. Accordingly, a conclusion that the statutory period began to run at the time the agreement was executed did not deprive those employees of their statutorily granted six months in which to enforce their guaranteed rights.

In the present case, however, it is conceded that the company had no employees at the time the agreement was executed. Since there were no employees to be affected by the agreement, no one had an interest in attacking it. Indeed the existence of the agreement was probably unknown to all except the parties thereto. It is, moreover, conceptually difficult to see how the execution of the agreement could have been an unfair labor practice when there were no employees subject to its terms. Clearly, until the first employee was hired, no one was deprived of any rights guaranteed by the Act.

In *Bryan,* the Board's ruling would have permitted the issuance of a complaint based on a charge filed at any time during the life of the agreement or for six months thereafter. In view of the Congressional intent expressed in § 10(b), the Court concluded that the Board's ruling exposed collective bargaining agreements to attack for too long a time.

The rote application of *Bryan's* holding to a case like the present one, far from exposing an agreement to unsettling administrative scrutiny for an excessive period of time, could conceivably totally shield an improper collective bargaining contract from unfair labor practice attack. For example, a perfunctory refusal by the General Counsel to consider the merits of any charges regarding an agreement signed more than six months earlier would permit a company to circumvent the policies of the Act by merely fashioning a "sweetheart" agreement with a hand-picked union before any employees were hired. Following the expiration of six months from the execution of the agreement, employees could be hired and subjected to the terms of the agreement, whose noncompliance with the Act would then be immune from censure. Similarly, in a case like the present one in which employees are hired only after the execution of the contract, although within six months thereof, commencing the running of the statute simply with the signing of the contract means depriving the employees of at least part of the time which Congress has decided they are to be allowed for protesting an unfair labor practice.

■ Since, in cases such as these, commencing the six-month limitation period on the date the agreement is signed means the obliteration ab initio of rights created by Congress, the likeli-

hood is that Congress intended the six-month period to begin only with the hiring of a live employee whose rights were affected, and who was in a position to protest. Cf. Bryan Mfg. Co., *supra*, 362 U.S. 411, at 429, fn. 19, 80 S.Ct. 822, 4 L.Ed.2d 832; also, 105 U.S. App.D.C. 102, at 110, 264 F.2d 575, at 582 (dissenting opinion). Accordingly, under the circumstances presented in this case, the Court holds that the six-month limitation period of § 10(b) did not begin to run until Christiana hired employees; hence, the charges having been brought within six months of this period, § 10(b) does not bar the issuance of a complaint based on plaintiffs' charges.

■ Defendant further contends that this Court does not have jurisdiction over the subject matter of this action. The Court recognizes the general rule that it "* * * has no power to order the General Counsel to issue a complaint * * *." Bandlow v. Rothman, 108 U.S.App.D.C. 32, 278 F.2d 866 (1960). It is well established that the General Counsel has broad discretion in deciding whether a complaint should issue. United Electrical Contractors Ass'n v. Ordman, 366 F.2d 776 (2d Cir. 1966). Accordingly, the Court will not direct the defendant to issue a complaint based on plaintiffs' charges nor will the Court review the defendant's day-to-day exercise of discretion with respect to determinations delegated to the latter's expertise. If, after considering the merits of plaintiffs' charges, defendant concludes that no complaint should issue, no judicial review of defendant's determination may be had. See 29 U.S. C. § 159(d).

Under the undisputed facts of this case, however, defendant, because of its incorrect application of § 10(b), refused even to consider plaintiffs' charges. The interpretation of the statute of limita-

tions is a purely legal question, distinguishable from questions of administrative policy requiring the special expertise of the General Counsel. Moreover, judicial resolution of this question is essential to prevent the erroneous construction of § 10(b) from barring, henceforth, the General Counsel's investigation of otherwise valid charges.[1]

■ The peculiar facts presented herein make this, thus, an extreme case which compels limited judicial action. Under these circumstances, there is ample authority to support a finding of jurisdiction in this Court. See McCulloch v. Sociedad Nacional, Etc., 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Hotel Employees Local No. 255 v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143 (1958); Office Employees International Union Local No. 11, AFL-CIO v. N.L.R. B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957).

For the reasons expressed above, plaintiffs' motion for summary judgment is granted. Because of this ruling, it is unnecessary to consider plaintiffs' motion for judgment on the pleadings, and defendant's motion for summary judgment is denied. The Court hereby adjudges and declares that in the case of an unfair labor practice arising out of a collective bargaining agreement, the six month limitation period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), does not commence until there are employees to be affected by such agreement. Accordingly, the General Counsel is not barred by § 10 (b) from considering the merits of plaintiffs' charges.

In view of the foregoing there appears no reason why the General Counsel ought not to consider plaintiffs' charges upon the merits.

1. "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300, 64 S. Ct. 95, 97, 88 L.Ed. 61 (1943).

It is ordered that plaintiffs' motion for judgment on the pleadings is denied.

It is further ordered that defendant's motion for summary judgment is denied.

It is further ordered that plaintiffs' motion for summary judgment is granted.

It is further ordered that the Clerk of the Court serve copies of this Memorandum and Order, by United States mail, upon the attorneys of record for the parties appearing in this cause.