ILLINOIS STATE EMPLOYEES COUN-
CIL 34, AMERICAN FEDERATION OF
STATE, COUNTY & MUNICIPAL EM-
PLOYEES, AFL–CIO, a voluntary labor
organization, Plaintiff,

v.

NATIONAL LABOR RELATIONS
BOARD et al., Defendants.

No. 75 C 775.

United States District Court,
N. D. Illinois, E. D.

May 1, 1975.

Gilbert Feldman, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., Chicago, Ill., Peter G. Nash, Washington, D. C., for defendants.

## DECISION

McMILLEN, District Judge.

Plaintiff has filed a verified complaint challenging a refusal of the defendant General Counsel of the N.L.R.B. to issue an unfair practice complaint against an employer. Plaintiff also seeks a temporary restraining order and a preliminary injunction against a decertification election which is presumably to be conducted by defendants as a consequence of the refusal to issue the unfair practice complaint. Defendants have filed a motion to dismiss for lack of jurisdiction or for failure to state a claim, and both sides have filed motions

for summary judgment. There are no issues of fact and we find and conclude that the defendants' motion for summary judgment should be granted pursuant to F.R.Civ.P. 12(b)(6).

### The Undisputed Facts

The plaintiff union and the employer were parties to a collective bargaining agreement which was to expire on October 15, 1974. On July 11, 1974 the employer proposed a new one-year contract to be effective August 1, 1974 but did not serve a termination notice until August 6, 1974. The union served a 60-day termination notice on August 8, 1974.

In the meantime the parties negotiated for a new contract and agreed on October 15, 1974 to extend the existing contract during negotiations, subject to termination on ten days' notice. After further negotiations, the union decided that the employer was not bargaining in good faith and gave the 10-day termination notice on November 1, 1974. On the same date, it also served notice of "the dispute" on the Federal Mediation and Conciliation Service and the Illinois Department of Labor, as provided in § 8(d)(3) of the National Labor Relations Act (29 U.S.C. § 158(d)(3)). On November 19, 1974 the union struck and immediately thereafter the employer mailed discharge notices to the union's members on the ground that they had engaged in a strike in violation of the National Labor Relations Act.

On December 2, 1974 the union filed unfair practice charges with the defendants, charging the employer with refusing to bargain in good faith and with "locking out" the employees without giving the notice required by § 8(d)(3). The Officer-in-Charge of the N.L.R.B.'s Subregion 38 declined to issue a complaint by a letter dated January 13, 1975. His refusal was based on "insufficient evidence to show that the Employer violated the Act". The letter stated that an investigation revealed that the employer had bargained in good faith and that the union had violated § 8(a)(3) of the Act by striking within 30 days of its notice to the F.M.C.S. and to the State Department of Labor which had been served November 1, 1974.

An appeal by the union to the General Counsel of the N.L.R.B. was denied on the ground, *inter alia,* that the union had a duty to refrain from striking until 30 days after the notifications were served pursuant to § 8(d)(3), citing The Peoria Chapter of Painting and Decorating Contractors etc., 204 N.L.R.B. No. 66 (1973). The General Counsel added that the employer was also justified in refusing to bargain because its filing of a decertification petition raised a good faith doubt of the union's majority. No further administrative appeal is provided by law; hence the union filed the complaint now pending in this court to require the General Counsel to reconsider his decision (Count I) and to enjoin the forthcoming decertification election (Count II).

### Narrow Jurisdiction Exists Here

■ The first question raised by the defendants is whether this court has any jurisdiction over the pending complaint. If the General Counsel improperly applied the statute and violated his duty, we do have limited jurisdiction under 28 U.S.C. § 1337. Leedom, et al. v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) holds that actions of the N.L.R.B. are enjoinable when it violates the provisions of the statute which created them, and Balanyi v. Local 1031, I.B.E. W., 374 F.2d 723 (7th Cir. 1967) acknowledges this court's power to remedy the Board's violation of a constitutional right (at p. 726). Neither of these cases, or any other which has been cited, permits the review of discretionary acts by the General Counsel or the Board, however.

This brings us to the controlling question of law in this case, to wit, whether the employer had a duty under § 8(d)(3) to notify the F.M.C.S. and Illinois Department of Labor of a dispute and whether, if it had such a duty, the

Subregional officer should have issued an unfair practice complaint against it based on the discharges and subsequent refusal to bargain. If the employer had the duty to serve the 30-day notice, then, the union contends, the employer *ipso facto* committed an unfair labor practice and the strike on November 19, 1974 was a protected activity.

Section 8(d) provides (29 U.S.C. § 158(d)):

> (d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification

> (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

> (2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

> (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

> (4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later: . . . .

The employer could be considered to have served notice of a desire to modify or terminate the contract by tendering a new proposed contract with an effective date of August 1, 1974, which was prior to the pre-existing expiration date of October 15, 1974. It also served a formal termination notice on August 6, 1974 which was more than 60 days prior to the contract expiration date. It did not serve any notification on the governmental agencies "within thirty days after such notice of the existence of a dispute" as provided in § 8(d)(3), and the union contends that the employer was required to do so as the "initiating party".

### Defendants Ruled Properly

In N. L. R. B. v. Peoria Chapter of Painting & Decorating Contractors etc., 500 F.2d 54 (7th Cir. 1974), the union gave the 60-day contract termination notice to the employer but delayed giving a 30-day notice to the government agencies until toward the end of the 60-day period. The employer locked out the union members after the 60-day termination notice was effective but before expiration of the 30 days. The union filed an unfair practice charge and the Board ruled that, although the union was the initiating party, both parties must abide by the contract until the 30-day notice expired. The Peoria Chapter of Paint-

ing & Decorating Contractors etc., 204 N.L.R.B. No. 66 (1973). The Court of Appeals denied enforcement of the Board's unfair practice decision. It held, *inter alia,* that the employer was not the "initiating party" and therefore was bound only to abide by the 60-day period, which it had done. The union was the initiating party and, as such, was the only one required to give the 30-day notice.

In the case at bar, the General Counsel has in effect ruled that the employer had no statutory duty to serve a 30-day notice and that, when the union did so, both parties were bound to maintain the contract in force until the 30 days had expired. Stated another way, the question in this case is whether the General Counsel has the jurisdiction to decide which is the "initiating party" and whether that party must serve a 30-day notice pursuant to § 8(d)(3). This is tantamount to deciding whether or not to issue a complaint on the plaintiff's charges which were filed on December 2, 1974.

The plaintiff union, relying on the Seventh Circuit's decision in Peoria Chapter of Painting & Decorating Contractors etc., supra, p. 1013, contends that the employer should have sent out the 30-day notice and that, having failed to do so, it terminated the contract illegally when it discharged its employees on November 19, 1974. However, in the *Peoria* case the union sent out the notice and terminated the contract before waiting thirty days, rendering itself and not the employer the violator. Substantially the same occurred in the case at bar. The union sent out the 30-day notice whereas the employer continued the contract in effect until the union struck on November 19, 1974. It is this act of terminating before the expiration of 30 days, not the failure to send a notice, which constitutes an unfair practice under § 8(a)(3).

■ Under the somewhat ambiguous wording of § 8(b)(3), a 30-day notice is sent out in the event of a "dispute".

This notice can be delayed without constituting an unfair practice, as occurred in the *Peoria* case. In fact, the union in the case at bar apparently failed to send out a timely 30-day notice because of an oversight by its original negotiator. On page 4 of the appeal to the General Counsel dated January 20, 1975, the plaintiff's attorney stated, "Woodward [the union representative] told Faught that he [Woodward] always sent notices of the termination of a contract to F.M. C.S. and the State Agency and that Faught knew the union had this obligation under the N.L.R.A.". And on p. 5 of the same letter, the attorney stated: "Instead of advising Woodward, who did not know that the original union negotiator had not filed 8(d)(3) notices, of its position, the Employer promised to produce a full package for membership consideration . . .". The union sent out the 30-day notice almost 3 months after its 60-day notice and at the same time sent the employer a 10-day notice terminating the contract. Thereafter it struck without waiting for 30 days and only then did the employer discharge, having no contractual duty to the contrary.

The defendants disavow the Seventh Circuit's decision in *Peoria* and rely in part on other decisions, e. g., United Furniture Workers of America v. N. L. R. B., 118 U.S.App.D.C. 350, 336 F.2d 738 (1964); Local Union 219, etc. v. N. L. R. B., 105 U.S.App.D.C. 232, 265 F.2d 814 (1959). The actual decisions are not necessarily in conflict, however, because they all hold that a party giving a 30-day notice cannot terminate the contract legally until the 30 days has expired. The Seventh Circuit takes the additional step of holding that a party which does *not* initiate the procedure by a 60-day notice is not bound by the 30-day notice, but this did not occur in the case at bar until after the union had violated § 8(d)(4).

■ The Supreme Court in N. L. R. B. v. Lion Oil Co., 352 U.S. 282 at 288, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957) ob-

served that § 8(d)(4) was "susceptible of various interpretations", and this case illustrates the validity of that observation. So long as the General Counsel has respectable judicial support for his position and is not arbitrarily violating his statutory duty, he should be free to apply an ambiguous statute by a good faith exercise of discretion. In this case he has not even violated the Seventh Circuit's holding but has acted consistently with it by not requiring the employer to give the 30-day notice and by ruling, in effect, that the union, not the employer, violated § 8(d)(4). The statute and the courts have consistently recognized the exclusive and unreviewable power of the General Counsel to issue unfair practice complaints except in such narrow circumstances as occurred in Leedom v. Kyne, supra, p. 1012. Plaintiff concedes that refusals to issue complaints are generally non-reviewable, citing, e. g., Retail Store Employees Union Local 954 v. Rothman, 112 U.S.App. D.C. 2, 298 F.2d 330 (1962).

Therefore, whether the General Counsel reached his result by statutory construction or by finding that the employer was not the "initiating party", we find and conclude that he did not violate his statutory duty by declining to issue a complaint against the employer and that the other grounds which he cited in the two letters of refusal are not subject to review.

### Plaintiff Was Accorded Due Process

By an amendment to the complaint filed April 8, 1975, the union added Count III which alleges that the General Counsel's disavowal of the Seventh Circuit's decision in Peoria Chapter of Painting & Decorating Contractors etc., (supra, p. 1013) deprives its members of due process. This argument is fully answered by our foregoing decision on Counts I and II. The General Counsel is not required at his peril to cite a decision in this Circuit when performing a discretionary act. He is merely required to remain within the confines of his authority and to adopt a reasonable interpretation of an ambiguous statutory provision. We have held that he did so and that his decision is not reviewable.

Plaintiff's due process after-thought also overlooks the fact that the initial decision was made on the Subregional level and was reviewed by the General Counsel. Congress could have provided for further review, but it specifically declined to do so. This procedure has been approved in every instance where the point has arisen, except in such egregious instances as occurred in Leedom v. Kyne. E. g., Balanyi v. Local 1031, I.B. E.W., supra, p. 1012; United Electrical Contractors Assoc. v. Ordman, 366 F.2d 776 (2d Cir. 1966); c. d. 385 U.S. 1026, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967). We find and conclude that the plaintiff's constitutional right to due process has not been violated in this case. See Withrow et al. v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).

It is therefore ordered, adjudged and decreed that the defendants' motion for summary judgment is granted, pursuant to F.R.C.P. 12(b)(6).