**Raymond T. KOLINSKE, Plaintiff,**

v.

**William A. LUBBERS,* et al.,
Defendants.**

No. 79–1101.

United States District Court,
District of Columbia.

June 22, 1981.

* William A. Lubbers has replaced John S. Irving as General Counsel of the National Labor Relations Board and, accordingly, is substituted as a defendant in this action. Fed.R.Civ.P. 25(d)(1).

David T. Bryant, Rex H. Reed, Fairfax, Va., for plaintiff.

Margery E. Lieber, Washington, D. C., Harry D. Camp, Detroit, Mich., for defendant Lubbers.

Joseph Rauh, Washington, D. C., John A. Fillion, Leonard R. Page, Michael B. Nicholson, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the motion of the defendants, William A. Lubbers, General Counsel of the National Labor Relations Board (hereinafter the "General Counsel" and the "N.L.R.B.") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (hereinafter "UAW"), to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Alternatively, the General Counsel has moved for summary judgment.

The facts alleged in the complaint, taken as true for purposes of the motions to dismiss, reflect that the plaintiff is a long time employee of the McLaughlin Company at its Petoskey, Michigan plant. The McLaughlin Company, an "employer" as defined in 29 U.S.C. § 152(2) and therefore subject to the jurisdiction of the N.L.R.B., has for many years recognized Local 1669 of the UAW as the exclusive bargaining agent for many of its employees. The plaintiff, however, has not ever been a member of either Local 1669 or the UAW, but works in the bargaining unit represented by Local 1669.

Local 1669 and the McLaughlin Company, in 1975, entered into a collective bargaining agreement containing a provision creating an "agency shop,"[1] which required the plaintiff, as an employee in the unit represented by Local 1669, to pay fees to Local 1669 equivalent to union dues as a condition of employment.[2] The plaintiff paid the re-

---

1. In his *Basic Text on Labor Law*, Professor Robert A. Gorman described the agency shop:

   The agency shop requires that an employee ... simply pay the union for services rendered by the union to employees within the bargaining unit as the employees' "agent" in negotiating and administering the labor contract. The Labor Act permits—and most agency shop agreements provide for—the ex-

   action of a service fee which is equivalent in amount to the initiation fees and periodic dues which are paid by full union members. The rationale is that even nonmembers reap the benefit of union representation and should not be permitted a "free ride."
   *Id.* at 642.

2. Agency shop clauses are established pursuant to Section 8(a)(3) of the National Labor Rela-

quired fees to Local 1669 during the duration of the bargaining agreement.

While this agreement was in effect (and now), Article 16 of the UAW's Constitution required that 30% of members' dues be placed in the UAW strike insurance fund. The UAW treated plaintiff's fees in a similar fashion, apportioning 30% for placement in the fund from which strike benefits were paid to employees.

The 1975 agreement expired in the spring of 1978 and Local 1669 went on strike, establishing a picket line at the Petoskey plant of the McLaughlin Company. Plaintiff, though not a union member, honored the picket line and did not work during the strike at the Petoskey facility.

The UAW paid strike benefits to members of Local 1669 who performed picket line or other strike duties, but when plaintiff applied for such benefits, the UAW refused payment on the ground that he had not performed picket line or other strike duties.

During the 1978 strike (and at the present time), the UAW Constitution provided in Article 8, Section 20 that:

> Non-members covered by an agency shop clause in a UAW contract shall receive all the material benefits to which members are entitled but shall not be allowed other membership participation in the affairs of the union.

A 1962 interpretation of this section issued by the UAW International Executive Board declared:

> Such non-members shall not be allowed attendance at Union meetings, the right to hold or run for any Union office (elect-ed or appointed) or any voting rights within the Union unless and until they have become members of the Union in accordance with the provisions of this Constitution.

The 1978 strike ended when Local 1669 and the McLaughlin Company reached accord on a new collective bargaining agreement, which included an agency shop provision similar to that clause executed in the 1975 agreement.

After the UAW rejected plaintiff's demands for strike benefits, he filed on July 11, 1978 an unfair labor practice charge with the Regional Director of the N.L.R.B.'s 7th Region, alleging that the UAW's denial of strike benefits violated Section 8(b)(1)(A) of the National Labor Relations Act (hereinafter the "NLRA"), 29 U.S.C. § 158(b)(1)(A).[3] On August 28 the Acting Regional Director refused to issue a complaint, and two months later plaintiff's appeal was denied.

On September 13, 1978, plaintiff brought another charge against the UAW and Local 1669, claiming that the continued collection of fees from the plaintiff by Local 1669 and the UAW, a portion of which is expended on programs unavailable to the plaintiff, violated § 8(b)(1)(A). On October 26, the Regional Director decided not to issue a complaint and on October 31, plaintiff's appeal of this decision was denied.

Plaintiff later instituted this action, contending that the General Counsel infringed plaintiff's right to refrain from associational activity, guaranteed by Section 7 of the NLRA, and the First Amendment to the Constitution; and his right not to be deprived of property without due process of

---

tions Act, 29 U.S.C. § 158(a)(3), which defines unfair labor practices and, as interpreted in *N.L.R.B. v. General Motors*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), permits a union to seek such a clause in collective bargaining. The employer had argued that permitting an agency shop clause in the bargaining agreement would have placed him in violation of § 8(a)(3)'s proscription against "discrimination in regard to hire or tenure of employment to encourage or discourage membership in any labor organization." The Court found that the employer's acceptance of an agency shop

clause would not constitute an unfair labor practice.

**3.** Section 8(b)(1)(A) provides that a union commits an unfair labor practice when it restrains or coerces employees exercising rights guaranteed in Section 7. 29 U.S.C. § 158(b)(1)(A). Section 7 gives employees "the right to refrain from [union activity] except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in [section 8(a)(3)]." 29 U.S.C. § 157.

law, guaranteed by the Fifth Amendment to the Constitution. Against the UAW, plaintiff alleges a breach of the duty of fair representation in that the Union engaged in conduct which was arbitrary, discriminatory, unconstitutional, and in bad faith.

Plaintiff seeks a writ of mandamus directing the General Counsel to issue complaints charging unfair labor practices against Local 1669 and the UAW for their failure to pay him strike benefits unless he participates in picketing and for their collection of fees allocated to be spent on programs in which he may not participate. Pending the completion of proceedings on these complaints, plaintiff seeks a stay in the action against the UAW. Were the relief against the General Counsel not granted, plaintiff seeks against the UAW either a refund of 30% of his fees paid from 1975–1978 or an award of the full amount of strike benefits for the 1978 strike and any that might result in the future, provided he honors the picket line.

The first question demanding resolution is whether there is jurisdiction to entertain plaintiff's request for a writ of mandamus ordering the General Counsel to issue an unfair labor practice complaint. Under Section 3 of the NLRA, 29 U.S.C. § 153, the General Counsel is vested with "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under [Section 10 of the NLRA, 29 U.S.C. § 160 (procedures for unfair labor practice complaints)]." This section has been uniformly interpreted to grant unreviewable discretion to the General Counsel. *See Detroit Edison Co. v. N.L.R.B.*, 440 U.S. 301, 316, 99 S.Ct. 1123, 1131–32, 59 L.Ed.2d 333 (1979) (the General Counsel can "in his unreviewable discretion refuse to issue . . . a complaint."); *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 ("the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint."); *Bandlow v. Rothman*, 278 F.2d 866 (D.C.Cir.), *cert. denied*, 364 U.S. 909, 81 S.Ct. 273, 5 L.Ed.2d 224 (1960) (per curiam) (district court lacks power to order General Counsel to issue a complaint).

Plaintiff asserts that this dispute falls into one of the recognized exceptions to the principle of non-reviewability. In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court held that the district court had jurisdiction under 28 U.S.C. § 1337 [4] "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188, 79 S.Ct. at 183. In *Leedom*, the Court found that the Board exceeded its statutory power by including in a single bargaining unit a group of professional employees with a group of non-professional employees without following proper procedures. In other certification actions, courts have narrowly and frugally construed the *Leedom* exception. *See Physicians National House Staff Association v. Fanning*, 642 F.2d 492 (D.C. Cir.1980) (en banc) ("[T]he district courts are powerless to adjudicate the merits of certification decisions absent a clear violation of the National Labor Relations Act by the Board." *Id.*, at 500.

Additionally, district courts have exercised jurisdiction over actions by the Board which infringe constitutional rights. *Fay v. Douds*, 172 F.2d 720, 723 (2d Cir. 1949) (Hand, J.) (giving district court jurisdiction if the "assertion of constitutional right is not transparently frivolous.") In *McCormick v. Hirsch*, 460 F.Supp. 1337 (M.D.Pa. 1978), the Court accepted jurisdiction over a complaint where the plaintiff, the superior for all Catholic elementary and secondary schools within a diocese, alleged that the N.L.R.B. had no jurisdiction over Roman Catholic schools that employ lay teachers who seek unionization. The court held that enjoining the Board from asserting jurisdiction over a Catholic parochial high school was necessary to protect the plaintiff's religious freedom.

---

**4.** Section 1337 provides that district courts shall have jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

■ Although judicial review of the General Counsel's decision not to issue a complaint might protect the rights of the individual more adequately, on occasion, and ensure responsible decision making,[5] it is apparent that jurisdiction does not lie in the district court to determine whether the General Counsel erred in this matter. Both the statutory exception as embodied in *Leedom* and the constitutional exception announced in *Fay* concerned certification actions undertaken by the entire Board, not a discretionary decision made by the General Counsel pursuant to § 3 of the NLRA. Indeed, research discloses no decision overruling the discretion of the General Counsel and ordering him to issue an unfair labor practice complaint.[6] It would then not only defy the heavy burden of precedent to accept jurisdiction over the General Counsel's decision not to issue a complaint, but more impressively, would establish a new precedent inappropriate in this unique instance.

The question remains, however, whether the plaintiff has stated a cause of action against the UAW. The UAW maintains that the court lacks jurisdiction over the cause of action asserted and that the plaintiff has not stated a legal claim upon which relief can be granted under the Constitution or under the union's duty to represent the plaintiff fairly. The plaintiff, rejecting these arguments, claims that the Court has jurisdiction, and that in conditioning his receipt of strike benefits on picketing activity, the union has infringed his First Amendment freedoms of speech and association. Plaintiff also contends that the union's allocation of 30% of his fees into the strike insurance fund is an unlawful apportionment of non-members' payments since, as such non-member, he is being denied strike benefits unless he participates in the affirmative activity of picketing.

■ Plaintiff asserts that jurisdiction exists under two separate statutory grants, 28 U.S.C. § 1337, the provision giving the district court jurisdiction to hear matters "arising under any Act of Congress regulating commerce . . .," and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which permits suits for violation of contracts between an employer and a labor organization or between any such labor organizations.

In suits alleging the breach of the duty of fair representation, district courts have exercised jurisdiction under section 301 where the suit alleges a union misuse of fees collected from non-members pursuant to agency shop agreements. *Bagnall v. Air Line Pilots Association*, 626 F.2d 336 (4th Cir. 1980), *cert. denied* —— U.S. ——, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981); *Seay v. McDonnell Douglas Corp.*, 427 F.2d 996, 1000 (9th Cir. 1970), *on remand*, 371 F.Supp. 754 (C.D. Cal.1973), *aff'd in part, rev'd and remanded in part*, 533 F.2d 1126 (9th Cir. 1976). In this case, the plaintiff alleges that the union breached the duty of fair representation in not paying him strike benefits from a fund comprised of money collected from union members and non-members, including the plaintiff, under an agency shop provision in the collective bargaining agreement.

5. *See* Rosenblum, *A New Look at the General Counsel's Unreviewable Discretion Not to Issue a Complaint under the NLRA*, 86 Yale L.J. 1349 (1977) ("Independent judicial scrutiny would . . . provide a remedy to protect the rights of private parties against arbitrary or erroneous decisions, and ensure that labor policy is made, not by the General Counsel, but by the body to whom Congress has entrusted the task—the NLRB." *Id.* at 1360–61).

6. At least one court has held that where the General Counsel's refusal to issue an unfair labor practice complaint is based on an erroneous interpretation of the limitations period governing the action, the General Counsel can be ordered to address the plaintiff's charges on the merits. Southern California District Council of *Laborers v. Ordman*, 318 F.Supp. 633 (C.D.Cal. 1970). *See also Illinois State Employees Council 34 v. N.L.R.B.*, 395 F.Supp. 1011 (N.D.Ill. 1975), *aff'd* 530 F.2d 979 (7th Cir. 1976) (General Counsel's interpretation of notice provisions of NLRA upheld; decision not to issue a complaint was based on sound judgment.)

Where the General Counsel, after issuing an unfair labor practice complaint, decides to settle a case informally, that decision is subject to judicial review. *See* Rosenblum, *supra*, at 1363–64 n.58 and accompanying text.

The UAW claims that the plaintiff's cause of action arises not out of the collective bargaining agreement, but rather out of the Union Constitution's provision noted at 2, *supra*, that entitles non-members covered by an agency shop clause to benefits equal to those received by members but not to the rights of membership participation in the union's affairs. Section 301, the UAW contends, does not confer jurisdiction on suits arising under constitutions because such disputes are merely internal union conflicts and thus present no situation where a contract exists between an employer and a labor organization or between any such labor organizations. Union constitutions, the UAW maintains, are not contracts under § 301. *See Smith v. United Mineworkers of America*, 493 F.2d 1241 (10th Cir. 1974); *Hotel & Restaurant Employees Local 400 v. Svacek*, 431 F.2d 705 (9th Cir. 1970). *Contra, Local 1219 v. United Brotherhood of Carpenters and Joiners*, 493 F.2d 93 (1st Cir. 1974); *Parks v. Brotherhood of Electrical Workers*, 314 F.2d 886 (4th Cir.) *cert. denied* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963) (finding that union constitutions are contracts within § 301). The UAW argues further that plaintiff has not satisfied this Circuit's requirement that the plaintiff plead a sufficient factual basis underlying the possible breach of the union constitution. *Local 1199, Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees*, 533 F.2d 1205 (D.C.Cir.1976).

In *Baker v. Newspaper & Graphic Communications Local 6*, 628 F.2d 156 (D.C.Cir. 1980), this Circuit held that § 301 did not confer jurisdiction on the federal courts to consider purely intra-union conflicts. Five union members sued their employer, their local union, and their international union alleging a breach of the duty of fair representation and the duty to permit plaintiffs to participate in union affairs. Because the controversy was between a union and some of its members and because it did not have the "requisite general effect on labor-management relations," *id.* at 164, the Court refused to exercise jurisdiction over the dispute.

This action differs materially from *Baker* for the simple reason that plaintiff is not a member of the United Auto Workers who, as such union member challenges some particular conduct by his representative in collective bargaining. Rather, the complaint presents a dispute between a union and a non-union member seeking to enforce his rights as against the union under an agency-shop clause. Not only do these facts present more than an "intra-union conflict," but the dispute is likely to have a widespread effect on labor-management relations at the McLaughlin Company. Accordingly, jurisdiction under § 301 is proper. *See also Seay v. McDonnell Douglas Corp.*, 427 F.2d 996 (9th Cir. 1970), *on remand*, 371 F.Supp. 754 (D.C.Cal.1973), *aff'd in part, rev'd and remanded in part*, 533 F.2d 1126 (9th Cir. 1976) ("While appellants' complaint does not allege a violation of the collective bargaining agreement on its face inasmuch as the agreement does not specifically discuss the permissible purposes for which agency dues may be expended, Section 301 must be given a broad reading." *Id.* at 1000).[7]

---

7. Additionally, 28 U.S.C. § 1337 has been held to confer jurisdiction on federal district courts for suits alleging the breach of the duty of fair representation despite the doctrine that federal courts, like state courts, have no jurisdiction to adjudicate independently matters either "arguably protected" or "arguably prohibited" by Sections 7 or 8 of the NLRA. *See San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

In *Street Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), the Supreme Court in *dicta* reiterated its prior

holding in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)

"that an action seeking damages for injury inflicted by a breach of a union's duty of fair representation was judicially cognizable in any event, that is, even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act and whether or not the lawsuit was bottomed on a collective agreement."

*Id.* at 299, 91 S.Ct. at 1924. This language has led courts to conclude that the exception to the pre-emption doctrine for § 301 suits based on alleged breaches of collective bargaining agree-

The UAW, in addition to seeking dismissal for lack of jurisdiction, has also alleged that the plaintiff's complaint does not afford a basis for relief. Against the plaintiff's assertion of constitutional violations and fair representation claims, the UAW contends that there is no state action and that the Union's policy of paying strike benefits only to those individuals who participate in strike-related activities is a legitimate expenditure of non-members' fees. The UAW also argues that it has not breached any duty owed the plaintiff because its actions do not rise to the level of arbitrary or discriminatory conduct and because plaintiff's employment relationship was unaffected.

The issue of state action presents a close inquiry, necessitating an excursion into the past. Under the Railway Labor Act, 45 U.S.C. § 152 Eleventh, Congress explicitly provided for union or agency shops notwithstanding state laws. In *Railway Employees Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Court held that union security agreements entered into pursuant to this section of the Railway Labor Act were imbued with sufficient governmental conduct to subject the agreement to constitutional guarantees of free speech and association. The Court viewed the congressional enactment as an explicit effort to permit union security clauses, vigorously trumpeting that "the federal statute is the source of the power and authority by which any private rights are lost or sacrificed." *Id.* at 232, 76 S.Ct. at 718.

The NLRA, however, overrides no state law with respect to agency shop agreements. While the Act permits employers to enter into agreements with unions to establish union or agency shops, Section 8(a)(3), the Labor Management Relations Act, Section 14(b), does not preclude the states' enaction of "right to work" laws which would prohibit union or agency shops. *See Oil, Chemical, and Atomic Workers International Union v. Mobil Oil Co.*, 426 U.S. 407, 409, 96 S.Ct. 2140, 2142, 48 L.Ed.2d 736 (1976).

Mixed results have emerged from those courts determining whether agency shop provisions such as the one in the instant case constitute state action. In *Reid v. McDonnell Douglas Corp.*, 443 F.2d 408 (10th Cir. 1971), it was held that under the NLRA, agency shop provisions did not rise to the level of state action because the Supreme Court's holding in *Hanson* was restricted to the Railway Labor Act, which specifically overrode state laws prohibiting agency or union shops. The Tenth Circuit noted,

> In NLRA matters, the federal government does not appear to us to have so far insinuated itself into the decision of a union and employer to agree to a union security clause so as to make that choice governmental action for purposes of the first and fifth amendments.

*Id.* at 410–411 (footnote omitted).

The First Circuit in *Linscott v. Millers Falls Co.*, 440 F.2d 14 (1st Cir.), *cert. denied* 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971), held that the agency shop provision under Section 14(b) of the Labor Management Relations Act, 29 U.S.C. § 164(b), and by implication Section 8(a)(3) of the NLRA, were entered into by unions and employers pursuant to federal authorization and thus were state action, despite the power of the state legislatures to override this authorization by enacting right to work laws. The Court stated,

> If federal support attaches to the union shop if and when two parties agree to it, it is the same support, once it attaches,

---

ments applies with equal force to a complaint averring a breach of the duty of fair representation under 28 U.S.C. § 1337. *See Beriault v. Local 40, Super Cargoes & Checkers*, 501 F.2d 258 (9th Cir. 1974).

In the instant action, not only are the rationales for the preemption doctrine inapplicable because the complaint seeks relief for a breach of the duty of fair representation, but the allegation that plaintiff's constitutional rights are infringed render the need to defer to the NLRB's special expertise or the congressionally designed structure for labor policy inappropriate. Jurisdiction under § 1337 vests over this action in conjunction with the applicability of § 301.

even though the consent of a third party, the state, is a precondition. The means by which the agreement is attained does not affect the significant language in *Hanson* . . . 'The federal statute is the source of the power and authority ·by which any private rights are lost or sacrificed,' and note 4 appended thereto, '4. Once courts enforce the agreement the sanction of government is, of course, put behind them.'

*Id.* at 16 (citations omitted). *See also Lykins v. Aluminum Workers International Union*, 510 F.Supp. 21, 25 (E.D.Pa.1980), slip op. at 9 (difference in the effect of the Railway Labor Act and the NLRA on contrary state law regarding agency shop provisions does not change the "congressional imprimatur" placed on such clauses by both statutes). *Cf. Beck v. Communication Workers of America*, 468 F.Supp. 93 (D.Md. 1979) (court notes attachment of constitutional guarantees to disbursement of fees collected from non-members under an agency shop provision in private and public employment).[8]

Agency shop clauses, the vital creature of Congressional contemplation and enactment, are subject to, and braced by, constitutional guarantees. That the states may vanquish agency shop clauses by legislative prohibition does not reduce the effect of the congressional authorization given in Section 8(a)(3). Consider the detail of congressional approval:

It shall be an unfair labor practice for an employer— . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, main-

tained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership,

29 U.S.C. § 158(a)(3). The Supreme Court in *N.L.R.B. v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), held that § 8(a)(3) was meant to allow agency shop clauses serving "the desire of Congress to reduce the evils of compulsory unionism with allowing financial support for the bargaining agent." *Id.* at 744, 83 S.Ct. at 1460. There is no doubt that absent § 8(a)(3), agency shop provisions entered into in the normal course of collec-

---

**8.** In his dissent from the denial of certiorari in *Buckley v. American Federation of Television and Radio Artists*, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1975), Justice Douglas, joined by the Chief Justice, noted, "When Congress authorizes an employer and union to enter into

union shop agreements and makes such agreements binding and enforceable over the dissents of a minority of employees or union members, it has cast the weight of the Federal Government behind the agreements just as surely as if it had imposed them by statute."

tive bargaining would be private action. But § 8(a)(3) clearly puts the stamp of congressional approval on agency shop clauses. The *General Motors* decision describes Congress' intent to ensure that employees who remain non-members of the union but who nonetheless accept its benefits pay fees for the union's work on their behalf. Compared to § 8(a)(3), the provision in the LMRA which permits states to pass right to work laws and prohibit agency shops is general and broad, applying to the entire gamut of the LMRA and the NLRA:

> Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

29 U.S.C. § 164(b).

Plainly, it would be unusual to hold that the authority of state governments over agency shops determines whether the federal statutory authorization in § 8(a)(3) is state action. The governmental action inquiry, instead of focusing on state power or authority, views the conduct at issue and whether it is sanctioned, authorized, or pursued by a governmental entity. Here, Congress not only tolerated but expressly authorized agency shop agreements. This congressional imprimatur is sufficient to imbue agency shop clauses with constitutional guarantees.

■ The question now arises whether the plaintiff has stated a cause of action for the violation of his constitutional rights. Plaintiff contends that UAW's policy of conditioning receipt of strike benefits on picketing activity impairs his freedom of speech and association. In plaintiff's view, he cannot be asked to do more, in order to receive strike benefits, than strike; forcing him to pick up a sign and display it publicly constitutes, he asserts, an unwarranted invasion of his freedom not to associate with the

UAW and not to speak.[9] The UAW maintains its policy, applied dispassionately to union members and non-members alike, represents a lawful and constitutional choice in that courts have permitted unions to expend fees collected from non-members in any manner the union desires provided it is related to collective bargaining, contract administration, and grievance adjustment.

In *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), the lightning rod of subsequent decisions, the Court held that fees from non-members collected under an agency shop provision entered into by collective bargaining, under the Railway Labor Act, 45 U.S.C. § 152 Eleventh, could not be expended to support political causes which the non-member opposes. The Court noted that the use of such funds for political purposes "is not a use which helps defray the expenses of the negotiation or administration of collective agreements, or the expenses entailed in the adjustment of grievances and disputes." *Id.* at 768, 81 S.Ct. at 1800.

Two years later, in *Brotherhood of Railway and Steamship Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), addressing some of the practical problems in formulating remedies for improper expenditures of non-members fees, the Court found improper an injunction restraining unions from collecting the non-members' fees if the union could demonstrate that some of the money was allocated for expenses germane to collective bargaining. A dissenting employee, however, could seek and obtain a refund for portions of his fee spent on political causes under a formula agreed to by the union and the employee or, in the absence of an agreement, under a proportion ordered by the Court.

More recently, in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Court examined an agency shop agreement involving union of public employees whereby non-members

---

**9.** "[R]ights to associate with X are necessarily rights to dissociate from Y." L. Tribe, *American Constitution Law* § 15–18 at 974 (1978).

were required to pay a fee to defray expenses from which they benefitted. The plaintiffs challenged the agency shop provision as violative of their First Amendment freedoms and contended that the union was engaged in unlawful expenditure of their fees for political and ideological causes with which they disagreed. On a motion for summary judgment, the Michigan courts had upheld the validity of the agency shop clause generally, and denied plaintiffs any relief on the issue of how their fees were spent because they did not object initially to the union about political contributions initially. In vacating that judgment the Supreme Court determined that the union and the employer could not compel dissenting non-union members to contribute to the support of ideological causes that they may oppose, but that the public employee union, as a condition of employment, could direct payment of fees to be expended on matters related to collective bargaining, contract administration, and grievance adjustment. The Court declared,

> To be required to help finance the union as a collective-bargaining agent might well be thought, therefore, to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in *Hanson* and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress.

*Id.* at 222, 97 S.Ct. at 1793 (footnote omitted).

From the pleadings presented, the plaintiff clearly states a cause of action for the union's alleged violation of his constitutional rights. *Street, Allen* and *Abood*, although permitting unions to exact funds from protesting non-members to defray expenses related to collective bargaining, do not authorize a union to compel non-members who have honored the picket line to participate in affirmative picketing activity in order to receive strike benefits to which they have contributed under the agency shop clause. Although picketing is a substantial post in the protective fence of a union's collective bargaining activity, it is by no means clear that UAW's policy of conditioning a non-member's receipt of strike benefits can survive the sturdy design of constitutional craftsmanship. At first blush, it appears unfair to permit plaintiff to receive material benefits equal to those offered to union members while those members toil the picket line and plaintiff merely remains absent from work. To require plaintiff, however, to carry a placard, in full public view, bespeaks an activism that raises significant constitutional quandries. To claim that collective bargaining activity may immunize a union against all requirements that it may impose on non-members under an agency shop provision would obscure the venerable principles of American jurisprudence. It is the individual's constitutional guarantees that fix the boundaries of a balanced adjudication of conflict inherent with agency shop presence. Plaintiff is entitled to raise his First Amendment interests in order to attack UAW's method of apportioning strike benefits, and the UAW cannot seek refuge from those interests merely by claiming that its activity is related to collective bargaining.

■ The final issue remaining is whether the plaintiff has stated a non-constitutional claim for breach of the duty of fair representation. The UAW argues that the duty does not extend to matters such as the instant case because it does not affect the plaintiff's employment relationship; even were the duty to apply, no breach has occurred. Plaintiff disputes both points, maintaining that the fair representation is just as forcefully applicable here as in *Abood, Street, Allen, Seay,* and *Beck.*

Initially recognized by the Supreme Court in *Steele v. Louisville & Nashville Railroad,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the duty of fair representation obliges the union "to serve the interest of all members without hostility or discrimination toward any, to exercise its dis-

cretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 892 (1967). The NLRB in *Miranda Fuel Co., Inc.*, 140 N.L.R.B. 181 (1962), held that § 7 of the NLRA gives employees "the right to be free from unfair or irrelevant or invidious treatment by their exclusive bargaining agent in matters affecting their employment," and "that Section 8(b)(1)(A) of the Act accordingly prohibits labor organizations, when acting in a statutory representative capacity, from taking action against any employee upon considerations or classifications which are irrelevant, invidious, or unfair." *Id.* at 185.

It cannot be said at this time that the plaintiff has presented no valid cause of action for breach of this duty. Plaintiff is compelled to pay the fees to the UAW or else the employer must discharge him or face an unfair labor practice charge under § 8(a)(1). Plaintiff objects to the manner in which the union expends that portion of his fees allocated for strike benefits. Moreover, it does not appear that the Union has prevailed on its claim that, assuming all of the pleadings are true, it has not acted in a manner that is unfair, that discriminated against non-members invidiously, or that is in bad faith.

Although the controversy between the plaintiff and the UAW is before the Court only on the motion of the UAW to dismiss, it appears that, as the plaintiff notes in his opposition to the defendants' motions, "the facts are largely undisputed." Pl.Opp. at 13. Entry of summary judgment may well have been appropriate at this stage. The Federal Rules for Civil Procedure, however, require that the parties be given an opportunity to file appropriate affidavits as well as any supplementary points and authorities before summary judgment is awarded. For the remaining parties to supplement the record with the necessary material in accordance with Fed.R.Civ.P. 56 cannot be too burdensome a task since the principal legal authority for this action has already been presented in the context of the instant motion. Accordingly, the parties will be set on a rapid schedule of filings to propel this litigation to fitting conclusion.

It is this 23rd day of June, 1981

ORDERED that the motion of the General Counsel of the National Labor Relations Board, William A. Lubbers, to dismiss this action against him for lack of jurisdiction be and it hereby is granted, and it is

FURTHER ORDERED that the UAW's motion to dismiss for lack of jurisdiction and for failure to state a claim be and it hereby is denied, and it is

FURTHER ORDERED that the parties file their respective motions for summary judgment with appropriate affidavits and any supplementary points and authorities no later than July 7, 1981, and that oppositions be filed no later than July 21, 1981.