**Raymond T. KOLINSKE, Plaintiff,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Defendant.**

**Civ. A. No. 79–1101.**

United States District Court, D. Columbia.

Jan. 25, 1982.

David T. Bryant, Rex H. Reed, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., for plaintiff.

Joseph L. Rauh, Jr., John Silard, Elliott C. Lichtman, Mary M. Levy, Rauh, Silard & Lichtman, Washington, D. C., John A. Fillion, Gen. Counsel, Leonard R. Page, Associate Gen. Counsel, Michael B. Nicholson, Asst. Gen. Counsel, UAW, Detroit, Mich., for defendant.

---

**MEMORANDUM OPINION AND ORDER**

JOYCE HENS GREEN, District Judge.

This is an action by Raymond T. Kolinske against the International Union, United Automobile, Aerospace and Agricultural Workers of America, UAW (hereinafter, "UAW," or "the union") for strike benefits that he argues were wrongfully denied him by the union, or, alternatively, for a refund of fees paid by him to the union corresponding to the portion of those fees that were allocated to the union's strike fund and for an appropriate reduction in his future fees. Plaintiff is not, nor was he at the time of the events leading up to this action, a member of the union. As an employee in the bargaining unit represented by the union, however, he was required to pay fees to the union equivalent to union dues as a condition of employment, pursuant to a collective bargaining agreement creating an "agency shop." This case presents the important question of constitutional and labor law whether a union may require a non-member in the bargaining unit, who honored the union's picket line, to participate in the union's strike-related activities before he may receive strike benefits to which he otherwise would be eligible. By a Memorandum Opinion and Order in this case filed June 22, 1981,[1] the Court dismissed the complaint as to defendant William A. Lubbers, General Counsel of the National Labor Relations Board but denied the UAW's motion to dismiss. While noting that entry of summary judgment "may well have been appropriate" at that stage, since, according to plaintiff, the facts were largely undisputed, the Court also ruled in that Order that the Federal Rules of Civil Procedure required that the remaining parties be given the opportunity to file supplemental points and authorities and additional affidavits and ordered their filing following appropriate dispositive motions. Because the Court set forth in the Order of June 22, 1981 the legal principles that would guide resolution of this matter, frequent reference to that Or-

---

1. *Kolinske v. Lubbers,* 516 F.Supp. 1171 (D.D. C.1981) [hereinafter cited as *Order of June 22,* *1981*].

der is made herein. The parties have now filed cross motions for summary judgment and supplemental memoranda and oppositions thereto. Upon these papers and the entire record in this case, the Court, for the reasons presented below in this opinion, finds that summary judgment in favor of the plaintiff is warranted and shall be granted, and that defendant's motion for summary judgment shall be denied.

The following facts are not in dispute. From at least 1958 through July, 1979, plaintiff was an employee of the McLaughlin Company at its Petoskey, Michigan plant. The McLaughlin Company has for many years recognized Local 1669 of the UAW as the exclusive bargaining agent for many of its employees. Although plaintiff worked in the bargaining unit represented by Local 1669, he has never been a member of either Local 1669 or the UAW.

In 1975, Local 1669 and the McLaughlin Company entered into a collective bargaining agreement which contained an agency shop provision. This provision required that all employees in the bargaining unit represented by Local 1669 pay to the UAW fees equivalent to membership dues. Plaintiff paid the required fees to Local 1669 while the bargaining agreement was in force.

While this agreement was in effect (and now), Article 16 of the UAW constitution required that 30% of members' dues be placed in the UAW strike insurance fund. Similarly, the union apportioned 30% of the plaintiff's fees to this fund, from which strike benefits were paid to employees.

The collective bargaining agreement of 1975 expired in April, 1978, and Local 1669 went on strike at the McLaughlin plant. Plaintiff honored the picket line and did not work at the plant during the strike. The UAW paid strike benefits to members of Local 1669 who performed picket line or other strike-related duties. When plaintiff applied for strike benefits, however, he was denied them on the ground that he had not performed such duties.

During the 1978 strike (and at the present), Article 6, Section 20 of the UAW constitution provided, in relevant part, that

Non-members covered by an agency shop clause in a UAW contract shall receive all the material benefits to which members are entitled but shall not be allowed other membership participation in the affairs of the Union.

A 1962 interpretation of this section issued by the UAW International Executive Board declared that

The "material benefits" of non-members under an agency shop agreement are such benefits as being eligible to receive *Solidarity*, strike assistance, and any other such direct service benefits received by members of the Union.

Such non-members shall not be allowed attendance at Union meetings, the right to hold or run for any Union office (elected or appointed) or any voting rights within the Union unless and until they have become members of the Union in accordance with the provisions of this Constitution.

The 1978 strike ended when Local 1669 and the McLaughlin Company reached accord on a new collective bargaining agreement, which included an agency shop provision similar to that clause executed in the 1975 agreement.

After plaintiff's demand for strike benefits was rejected by the union, he filed an unfair labor practice charge with the NLRB Regional Director pertaining to that denial of benefits. The Acting Regional Director refused to issue a complaint, and plaintiff's subsequent appeal of the refusal was denied. Plaintiff then brought another charge against the UAW and Local 1669, claiming that the continued collection of fees from the plaintiff by the UAW and Local 1669, a portion of which is expended on programs unavailable to him, violated federal labor laws. The Regional Director decided not to issue a complaint, and plaintiff's appeal of the decision not to prosecute was denied. Plaintiff later initiated this action, naming the General Counsel of the NLRB and the UAW as defendants, the action against the General Counsel being

dismissed by this Court in its Order of June 22, 1981, as noted above.

In denying the UAW's motion to dismiss, this Court found that jurisdiction to consider plaintiff's claim existed under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and under the provision giving district courts jurisdiction to hear matters "arising under any Act of Congress regulating commerce. . . ." *Order of June 22, 1981*, 516 F.Supp. at 1175–76; 1176 n.7. This Court also ruled that plaintiff had stated a cause of action for violation of his constitutional rights of freedom of speech and association, and refused to hold that plaintiff had not stated a nonconstitutional claim for breach of the duty of fair representation. *Id.* at 1179–80.

■ Plaintiff argues that the union's requirement that a nonmember engage in strike activity in order to receive strike benefits from a fund to which he contributed violates the protections of the First Amendment in that it forces the employee to engage in speech supporting a cause he does not wish to join and deprives him of his right not to associate with a group. The act of marching on a picket line is often intertwined with speech. *See, e.g., Cox v. Louisiana*, 379 U.S. 559, 564, 574, 85 S.Ct. 476, 480, 485, 13 L.Ed.2d 487 *reh'g denied*, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 814 (1965). The essence of a picket line is the communication to the world of a group's dissatisfaction with the status quo. On the other hand, the UAW argues that employee participation in strike activities is critical to the union's ability to engage in meaningful collective bargaining. As this Court noted in its earlier order, the constitutional rights of the individual limit the extent to which a union can call upon non-members for their support of the union's collective bargaining endeavors. *Order of June 22, 1981*, at 1180.

■ A union operating pursuant to an agency shop provision may draw financial support from non-members to help defray the costs of collective bargaining activities from which the non-members benefit, such as the expenses the union incurs in negotiating or administering collective agreements or costs relating to the resolution of grievances and disputes. *International Association of Machinists v. Street*, 367 U.S. 740, 768, 81 S.Ct. 1784, 1799, 6 L.Ed.2d 1141. Indeed, the UAW did extract from plaintiff monies that went to build the strike insurance fund from which the plaintiff now seeks to benefit. But where what the union seeks to elicit from the non-member touches the non-member's First Amendment rights, the union's power to draw support is circumscribed by those rights of the non-member. *Order of June 22, 1981*, at 1179–80, citing *Abood v. Detroit Board of Education*, 431 U.S. 209, 222, 97 S.Ct. 1782, 1792–93, 52 L.Ed.2d 261, *reh'g denied*, 433 U.S. 915, 97 S.Ct. 2989, 53 L.Ed.2d 1102 (1977), *Brotherhood of Railway and Steamship Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), and *International Association of Machinists v. Street, supra*. Any conditions the union desires to impose upon the receipt of benefits must not interfere with these important constitutional concerns.

■ Certainly it is permissible to condition payment of strike benefits upon the employee's honoring the picket line. Fairness dictates this result because, obviously, an employee who reports for work during a strike and receives his normal pay as usual has no need for strike benefits. Plaintiff here honored the picket line, and therefore, was in need of strike insurance payments. Moreover, since he did not cross the line, any argument that plaintiff interfered with the union's mandated function of collective bargaining would have no merit. It must be remembered, nevertheless, that a requirement that an employee desiring strike benefits not cross the line is not to be construed as compelling the employee to support the strike. A person who refuses to cross a picket line does not necessarily embrace the views of the picketers; he may have other valid reasons for not crossing. *Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53*, 520 F.2d 1220, 1228 (6th Cir. 1975), *cert. denied*, 428 U.S. 909, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976), 29 U.S.C. § 143.

Furthermore, while this precise issue is not before the Court, it appears permissible under the First Amendment for a union, operating under an agency shop provision where employees may choose whether or not to join the union, to condition payment of strike benefits to its own members upon their taking a part in strike activities that involve or enable communication of the union's point of view. Imposing this condition upon union membership does not pose the same constitutional problems as does imposing it upon non-members because, as voting members of the union, the members collectively make a choice to proclaim to the employer their statement of dissatisfaction, as a result of a process in which each member has an opportunity for input. By exercising his choice to become a member of a union and participating in its decision-making process, a member of a union accepts as his own, to the extent that he is a part of that group, the position of the union on the question of whether to strike.

■ Yet a union may not require a non-member, as a condition of receiving strike benefits, to march in a picket line, in what the world would reasonably interpret as a public expression of support for an agreement with the union's position, when he would not choose to do so voluntarily and did not take part in the union's decision to strike and picket. By definition, a non-member has no right to input into that decision. As the UAW International Executive Board noted in its 1962 interpretation of the UAW constitution provision setting forth the rights of non-members covered by an agency shop clause, these non-members such as plaintiff are denied attendance at union meetings, the right to hold or run for any union office, and the right to vote on issues before the union. For the union to compel non-members to carry its message on penalty of denial of strike benefits cannot withstand constitutional scrutiny. *Order of June 22, 1981*, at 1180.

A more difficult question is whether the union constitutionally can require non-members to take part in strike activities that do not involve actual picketing as a condition of receiving strike benefits. UAW argues that since members and non-members may fulfill their requirement of participation in strike activities by accepting duties other than marching on a picket line, such as working in the strike kitchen, serving on the community services committee, attending classes or lectures, or handing out strike benefit checks—alternatives plaintiff was offered but refused—this requirement does not offend the First Amendment. Plaintiff, in response, asserts that whether or not there were options other than picket line duty available to him is immaterial, and that "[s]uch options do not lessen the First Amendment violation which results from *any* forced associational activity." Plaintiff's Opposition to UAW's Motion for Summary Judgment 1.

■ The First Amendment protects the freedom not to be required to associate with groups holding views which an individual regards as obnoxious with the same force with which it protects the freedom of association itself. *See, e.g., Gavett v. Alexander*, 477 F.Supp. 1035, 1045 (D.D.C.1979). Congress has declared the right not to associate sufficiently important as to build it into the structure of the National Labor Relations Act as well. Section 7 of the Act, 29 U.S.C. § 157 grants workers not only the right to organize and to form or join unions (in essence, the right to associate), but the "right to *refrain* from any or all of such activities. . . ." (Emphasis added.) To offer a non-member the "alternative" of working in a strike kitchen or performing some other kind of non-picketing duty as a requirement for strike benefits is to give no alternative at all where associational rights are concerned. A non-member who is not willing to march in a picket line and proclaim a message that is not his has a right not to be forced to toil beside those who support the view embodied in that message and give their time and effort for its publication.

■ The UAW's alternative requirement of strike-related activity other than picketing infringes not only the right not to associate but the free speech right as well,

in that it requires non-members to provide valuable services whose sole and ultimate utility is in the advancement of the union's message. The right to speak or to refrain from speech embraces more than the actual communication made by the person asserting the right. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975). In *Buckley*, the Supreme Court held that the making of monetary contributions to political campaigns cannot be reduced to simple, unprotected "conduct," but at the core is imbued with the speech interest as well. *Id*. at 16, 96 S.Ct. at 633. Moreover, the right to contribute to political and other causes necessarily includes the right not to contribute. *Abood v. Detroit Board of Education*, 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977). The *Abood* case is especially instructive in that it also involved an agency shop provision requiring non-members to make contributions to a union fund. There the Court held that the union and the employer could not compel dissenting non-union members to contribute to the support of ideological causes that they opposed. *Id*. In the matter at hand, the UAW likewise deigns to extract from non-members valuable contributions, not of money per se but of services that work to facilitate communication of the views of the union. The union may not constitutionally demand of non-members such contributions of valuable services as a condition of payment of strike benefits—benefits for which they have already paid by way of their fees. In light of the teachings of *Buckley* and *Abood*, the UAW's requirement is no less abhorrent to the First Amendment than conditioning non-members' strike benefits upon their carrying placards trumpeting the union's message on the picket line.

Plaintiff also argues that the union's actions in denying him strike benefits from the fund to which he was compelled to contribute fees pursuant to the agency shop provision constitutes a breach of the duty of fair representation. As noted above, jurisdiction to consider such a claim lies under 28 U.S.C. § 1337, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *See Order of June 22, 1981*, at 1175.

■ The essence of the duty of fair representation is that all members of the bargaining unit be treated nondiscriminatorily. The union must endeavor "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842. Moreover, the NLRB has held that employees have "the right to be free from unfair or irrelevant or invidious treatment by their exclusive bargaining agent in matters affecting their employment," and "that Section 8(b)(1)(A) of the Act accordingly prohibits labor organizations, when acting in a statutory representative capacity, from taking action against any employee upon considerations which are irrelevant, invidious, or unfair." *Miranda Fuel Co., Inc.*, 140 N.L.R.B. 181, 185 (1962).

In the Order of June 22, 1981, this Court stated:

It cannot be said at this time that the plaintiff has presented no valid cause of action for breach of this duty. Plaintiff is compelled to pay the fees to the UAW or else the employer must discharge him or face an unfair labor practice charge under § 8(a)(1). Plaintiff objects to the manner in which the union expends that portion of his fees allocated for strike benefits. Moreover, it does not appear that the Union has prevailed on its claim that, assuming all of the pleadings are true, it has not acted in a manner that is unfair, that discriminated against non-members invidiously, or that is in bad faith.

516 F.Supp. at 1181.

■ The union asserts that it is not guilty of discrimination since "[t]he eligibility rules apply equally to members and non-members alike, and have been administered with an even hand." Defendant's Memorandum in Support of its Motion for Summary Judgment 4. No one disputes that the union asks precisely the same participation of members as it does of non-members

as a condition of the payment of strike benefits. But the union's assertion misses the point. The requirement of participation in strike activity can never be imposed "equally" upon members and non-members where the non-members did not have equal input into the decision that there would be a strike. As noted above, the decision to go on strike and stay off the job was that of the union members, and as such, there was nothing improper in the union's requiring its membership to lend active support to that decision. Yet to command plaintiff, foreclosed from input into this decision, to embrace it and work for it as if it were his own before allowing him benefits from a fund to which he contributed in equal measure as the other employees is to discriminate against him.[2] As such, the UAW's action in denying plaintiff his strike benefits constituted a violation of the duty of fair representation.

As this Court noted in its Order of June 22, 1981, at 1180, it may, at first blush, appear unfair to grant plaintiff material benefits equal to those offered to union members while those members give their time and effort on the picket line or in support of it—and plaintiff merely remains absent from work. But as concerns plaintiff, strike benefits are not to be construed as a reward or "wages" for taking part in strike-related activities. Strike benefits, as the word "benefits" implies, serve to compensate in some part the wages that workers are unable to earn because a strike has been called. Plaintiff had no control whatsoever over whether there would be a strike. As such, to him the strike benefits were like unemployment benefits for laid-off employees: something an employee is entitled to in order to compensate him for contingencies beyond his control that deprive him of the ability to earn his salary.

Because it is permissible for a union, under an agency shop scheme, to extract monetary contributions from non-members in the same amounts as are solicited from members, in order to defray the costs of collective bargaining, one of which is the maintenance of a strike insurance fund, the Court will not order that plaintiff be refunded the portion of his fees allocated to that fund. Nor will it order a proportional reduction in any future fees. Instead, the relief to be granted plaintiff shall consist of payment to him of $130.00, the appropriate amount of strike insurance benefits for the period during which he honored the picket line in the 1978 strike.

Plaintiff has also asked that the Court award him attorney's fees. He notes in his memorandum in support of his motion for summary judgment that under *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), while the prevailing party generally is not entitled to attorney's fees, they may be ordered where a common benefit is conferred, where the losing party has willfully disobeyed a court order, or where the losing party has acted in bad faith. Plaintiff argues that attorney's fees should be awarded in this case on either of the first or third exceptions stated above. Plaintiff is entitled to attorney's fees on neither the "common benefit" or the "bad faith" ground.

In light of the foregoing, it is, by the Court, this 25th day of January, 1982,

ORDERED, that plaintiff's motion for summary judgment be and hereby is granted, and it is

FURTHER ORDERED, that defendant's motion for summary judgment be and hereby is denied, and it is

FURTHER ORDERED, that plaintiff's request for attorney's fees and costs be and hereby is denied.

**2.** This inequity could not have been cured by allowing non-members such as plaintiff the right to vote in union elections (a right denied to non-members by Article 6, Section 20 of the UAW constitution), because such would be, in effect, to compel all employees in the bargaining unit to join the union, in direct contravention of the agency shop provision in the collective bargaining agreement and the right, established in Section 7 of the National Labor Relations Act, to refrain from joining a union.