Raymond T. KOLINSKE

v.

William A. LUBBERS, General Counsel,
National Labor Relations Board,

International Union, United Automobile,
Aerospace & Agricultural Implement
Workers of America, UAW, Appellant.

No. 82–1203.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 14, 1983.

Decided June 17, 1983.

Merrill J. Whitman, Detroit, Mich., for appellant. John A. Fillion, Leonard R. Page, Michael B. Nicholson, Detroit, Mich., and Laurence Gold, Washington, D.C., were on brief, for appellant. Abraham L. Zwerdling and Stephen I. Schlossberg, Detroit, Mich., also entered appearances for appellant.

David T. Bryant, Springfield, Va., with whom Rex H. Reed, Springfield, Va., was on brief, for appellee.

Before TAMM and GINSBURG, Circuit Judges, and JOHN A. PECK,* U.S. Senior Circuit Judge for the Sixth Circuit.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Appellee Raymond Kolinske brought suit in district court alleging that the defendant International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") violated his constitutional rights and breached its duty of fair representation when it refused to pay Kolinske strike benefits because he refused to participate in any strike activities except to honor the picket line. The district court granted appellee summary judgment, holding that the UAW's eligibility rules for strike benefits, when imposed on a non-member like appellee, violated appellee's first amendment freedom of association. The district court also ruled that the union breached its duty of fair representation. Unlike the district court, we find that the authorization provided by federal law in the agency shop clause used by the UAW does not transform the agency shop clause or the UAW's eligibility rules for strike benefits into state action. In addition, we hold that the duty of fair representation does not extend to this dispute, because the dispute involves only the relationship between appellee and his collective bargaining representative and lacks a substantial impact on his relations with his employer.

## I. BACKGROUND

### A.

Until 1971 the production and maintenance workers at the Petoskey, Michigan, plant of the McLaughlin Company were represented by the Pioneer Union, an independent union. Under the collective bargaining agreement negotiated by the Pioneer Union, the McLaughlin Company maintained a so-called "union shop" and required workers within the bargaining unit to join and pay dues to the Pioneer Union as a condition of retaining employment. Appellee Raymond Kolinske, who worked for McLaughlin from 1958 to 1979,[1] was an active member of the Pioneer Union and served on its bargaining committee.

In 1971 appellant UAW and its Local 1669 replaced the Pioneer Union as the collective bargaining representative for the production and maintenance workers at McLaughlin's Petoskey plant. The collective bargaining agreement negotiated in 1975 between the UAW and the company contained an "agency shop clause"[2] that did not require employees covered by the collective bargaining agreement to join the union, although non-members were required to pay fees to Local 1669 equivalent to union dues as a condition of employment. Appellee never joined the UAW but paid the agency fees to Local 1669 as required by the union's contract with McLaughlin.

The UAW contract with McLaughlin expired in the spring of 1978. Negotiations failed to secure an acceptable contract, and Local 1669 went out on strike for sixteen days before a new agreement was reached. During the strike the UAW distributed strike assistance payments to employees eligible under union guidelines to receive them. Both union members and non-members were eligible for strike benefits, provided that an employee participated in strike activities. Although appellee honored the picket line, he refused express requests to participate in any other activity,

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. Appellee Kolinske was discharged by McLaughlin in 1979 for failing to satisfy sick leave requirements. Record Excerpts Volume ("Record") at 74, 76. The discharge was upheld after the UAW took the matter to arbitration. *Id.* at 76, 81.

2. A type of union security clause, an agency shop clause requires all employees covered by the collective bargaining agreement to pay dues or equivalent fees to the union, but does not require every employee to join the union as a condition of retaining employment. *See* M. FORKOSCH, A TREATISE ON LABOR LAW § 144, at 278 (2d ed. 1965); *NLRB v. General Motors Corp.,* 373 U.S. 734, 736, 83 S.Ct. 1453, 1456, 10 L.Ed.2d 670 (1963).

such as picketing or kitchen duty, connected with the union's work stoppage. He rejected union efforts to accommodate his fears of harassment during picketing, and since appellee offered no other assistance to striking workers, he was refused UAW strike benefits.

### B.

The strike benefits denied appellee have been paid by the UAW since its founding in 1935 to aid UAW locals engaged in strikes or affected by lockouts. Benefits are paid out of a fund created by setting aside a portion of members' dues and non-members' agency fees. Although members and non-members initially pay their dues or fees to their local unions, a portion of dues or fees allocated to funding strike benefits is remitted to the UAW, which administers the strike fund through its Strike Insurance Department. *See* Affidavit of Douglas Caravaggio, International Representative, International Union, UAW, Exhibit D, Record Excerpts Volume ("Record") at 90. During the period of Kolinske's employment with McLaughlin, thirty percent of both dues and agency fees were transferred to the UAW strike fund. *Kolinske v. UAW,* 530 F.Supp. 728, 731 (D.D.C.1982).

Eligibility for strike benefits is determined by guidelines established by the UAW. The amount received by any striker may vary, depending on the striker's marital status and number of dependents, and is subject to a maximum payment of $50.00 weekly. *See* UAW Administrative Letter No. 5, at 10 (Sept. 6, 1977), Record at 88. Other conditions of eligibility include registration, non-delinquency in dues or agency fees, active employment immediately prior to the strike, and participation in strike activity. *Id.* at 8–9, Record at 86–87. Under the UAW guidelines, strike participation can take several forms: picketing, performing kitchen duty to feed those picketing, distributing strike assistance checks, or ferrying strikers to state welfare offices to receive food stamps. Summary of UAW Strike Assistance Rules, pt. 5, Record at 84. Although non-member agency fee payers like appellee are not allowed to participate in union affairs, they are eligible to receive the "material benefits" that members receive by reason of their dues payments. UAW Constitution of 1978, art. 6, § 20, Record at 95. Because the UAW has interpreted "material benefits" to include strike benefits, *id.,* appellee was eligible for strike benefits, provided he otherwise satisfied conditions for receiving such payments.

The UAW's stated purpose in requiring workers to participate in strike activities before receiving benefits is to increase the effectiveness of its collective bargaining efforts. Affidavit of Douglas Caravaggio at 4, *supra,* Record at 81. Based on its long experience with collective bargaining, the UAW has found that maximum participation in strike activities increases solidarity among strikers, thereby enhancing the effectiveness of the strike as a negotiating tool. *Id.,* Record at 81. Past experience has also shown the UAW that if strikers perceive that some workers are not carrying a fair share of the burden of the strike, their willingness to participate in the strike is adversely affected. *Id.* at 5, Record at 82. The wide range of activities permitted as part of strike participation is part of a UAW policy to accommodate those workers who have religious, moral, or ideological objections to picketing, or who are otherwise unable to picket. *Id.,* Record at 82.

### C.

Following the UAW's rejection of appellee's demand for strike benefits, appellee filed two unfair labor practice charges with the National Labor Relations Board ("NLRB") against the UAW and its Local 1669, charging that the UAW's refusal to pay strike benefits and its continued collection of his agency fees to support the strike benefits fund constituted a violation of section 8(b)(1)(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(1)(A) (1976).[3] The Regional Di-

---

**3.** 29 U.S.C. § 158(b)(1)(A) reads as follows:

It shall be an unfair labor practice for a

rector of the NLRB investigated the charges and refused to issue a complaint, finding that the UAW's eligibility requirements for strike benefits were lawful and evenhandedly enforced. The General Counsel of the NLRB affirmed the findings of the Regional Director and the charges were dismissed.

Kolinske then initiated suit in federal district court against the UAW and the General Counsel for the NLRB. In his complaint appellee alleged that both defendants had violated his rights under section 7 of the NLRA, 29 U.S.C. § 157 (1976),[4] and the first and fifth amendments to the Constitution, and that the UAW had further wronged him by breaching its duty of fair representation owed him. The district court dismissed the action against the Regional Director of the NLRB, holding that it was without jurisdiction to review his decision not to issue a complaint under section 3 of the NLRA. *Kolinske v. Lubbers,* 516 F.Supp. 1171, 1175 (D.D.C.1981). Appellee has not appealed that decision of the district court. At the same time, however, the district court denied UAW's motion to dismiss, holding that the UAW's use of agency fees constituted state action subject to constitutional scrutiny and that the union's denial of strike benefits established a cognizable breach of the duty of fair representation. *Id.* at 1180–81. On cross-motions for summary judgment, the district court ruled that the UAW's refusal to pay strike benefits violated appellee's first amendment rights and breached its duty of fair representation. *Kolinske v. UAW,* 530 F.Supp. at 733–35. The district court awarded appellee damages of $130.00, the amount of strike benefits which he would have received had he participated in strike

activities originally. *Id.* at 735. The UAW appealed to this court, pursuant to 28 U.S.C. § 1291 (1976).

## II.

At the threshold we address the district court's finding that the eligibility requirements imposed by the UAW constituted state action. Because the UAW is a private entity, our inquiry must be directed to the central issue whether the alleged infringement of appellee's first amendment rights is " 'fairly attributable to the state.' " *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418, 426 (1982) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482, 495 (1982)). The search for the presence of the state in this inquiry reflects a fundamental principle of this country's body politic, since the principle of state action "preserves an area of individual freedom" outside "the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482, 495 (1982). Without state action the UAW's rules are only private conduct beyond the pale of constitutional protection. But if the eligibility rules for strike benefits bear the imprimatur of the state, then our inquiry continues and intensifies, since the UAW must establish a compelling and convincing reason for the eligibility requirements. *See, e.g., Buckley v. Valeo,* 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976); *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968); *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963).

labor organization or its agents—
(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; . . . .

**4.** 29 U.S.C. § 157 (1976) declares:
Employees shall have the right to self-organization, to form, join, or assist labor or-

ganizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

■ The district court held that the agency shop clause negotiated by the UAW with the McLaughlin Company constituted state action subject to constitutional guarantees, *Kolinske v. Lubbers,* 516 F.Supp. at 1178, and that the eligibility rules for strike benefits also warranted constitutional safeguards, since strike benefits were paid out of funds collected in part from agency fee payers like Kolinske, *id.* at 1179. The court premised its holding on the state action question on *Railway Employes' Department v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), in which the Supreme Court held that a union shop clause negotiated pursuant to section 2(11) of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 Eleventh (1976),[5] constituted state action. The district court also relied on the line of cases following *Hanson* that ended with *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), in which the Court applied constitutional safeguards to the use of agency fees paid by local government employees to their collective bargaining representative. Although the agency shop clause at issue in this case was authorized by a different statutory provision from that involved in *Hanson* and *Abood,* section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3) (1976),[6] the district court reasoned that the similarity "detail[ed]" authorization in section 8(a)(3) gave rise to a "congressional imprimatur ... sufficient to imbue agency shop clauses with constitutional guarantees." *Kolinske v. Lubbers,* 516 F.Supp. at 1178–1179.

Our inquiry would be short if we thought that the state action question in this case were controlled by *Hanson* and its line of

cases. At issue in *Hanson* was a provision in a labor contract that required all employees covered by the collective bargaining agreement to become union members as a condition of retaining employment. The plaintiff, who refused to join the union, brought suit in Nebraska state court to enjoin enforcement of the union shop clause, which was forbidden by Nebraska's right-to-work law. Although the Court upheld the clause against constitutional challenge, it reached the constitutional claims presented because the private agreement was "made pursuant to federal law which expressly declares that state law is superseded.... In other words, the federal statute is the source of the power and authority by which any private rights are lost or sacrificed." 351 U.S. at 232, 76 S.Ct. at 718 (citation omitted) (footnote omitted).

In two later cases the Court faced the logical extension of its decision in *Hanson.* While in *Hanson* the Court approved the use of compulsory union fees for collective bargaining purposes, in *International Association of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), and *Brotherhood of Railway and Steamship Clerks v. Allen,* 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), the Court confronted challenges by union members to the use of union dues for political purposes that the dissenting members opposed. Both cases arose under the RLA, which permitted the Court to avoid the constitutional claims presented. Rather, the Court interpreted section 2(11) of the RLA to deny unions the statutory power to use funds collected from a member over his express objection to sup-

---

**5.** Section 152 Eleventh in relevant part reads as follows:

Notwithstanding any other provisions of this chapter, or of any other statute or law of the United States, or Territory thereof, or of any State, any carrier or carriers ... and a labor organization or labor organizations ... shall be permitted—

(a) to make agreements, requiring, as a condition of continued employment, that ... all employees shall become members of the labor organization representing their craft or class ....

**6.** 29 U.S.C. § 158(a)(3) declares:

It shall be an unfair labor practice for an employer—

. . . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein ....

port ideological or political activities that he opposes. *Allen,* 373 U.S. at 118, 83 S.Ct. at 1161, *Street,* 367 U.S. at 768–69, 81 S.Ct. at 1799–800. In each case the Court grounded its decision on section 2(11) of the RLA, the same section that formed the basis for finding state action in *Hanson.*

The decisions in *Hanson* and *Street* controlled the decision reached by the Court in *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In *Abood,* several local government employees contested the lawfulness of conditioning their employment on the payment of agency fees to their bargaining representative. The Court upheld the right of the union to assess non-members fees for the purpose of collective bargaining, *id.* at 224–26, 97 S.Ct. at 1793–94, but ruled that the union could not constitutionally use agency fees for political purposes unrelated to its duties as collective bargaining representative, *id.* at 235, 97 S.Ct. at 1799.

Our review of the Supreme Court decisions in *Hanson, Street,* and *Allen* leads us to agree with the Tenth Circuit that "[w]hatever the wisdom of this reasoning for the Railway Labor Act, it has no applicability to the National Labor Relations Act." *Reid v. McDonnell Douglas Corp.,* 443 F.2d 408, 410 (10th Cir.1971). In *Hanson* it was the preemption of a contrary state law by federal law that was central to the Court's finding of state action, since the Court went on to note that section 14(b), the parallel provision of the Taft-Hartley Act, 29 U.S.C. § 164(b) (1976), required that union shop clauses yield to state law proscribing them. *See Hanson,* 351 U.S. at 232 n. 5, 76 S.Ct. at 718 n. 5. Because the federal statute did more than merely authorize the use of a union shop clause and allowed a private agreement to override contrary state law, the constitutional deprivation alleged by the plaintiff in *Hanson* was caused by the exercise of some *right or privilege* created by the government. *See Lugar v. Edmondson Oil Co.,* 457 U.S. at 936, 102 S.Ct. at 2754, 73 L.Ed.2d at 495. A crucial distinction between this case and *Hanson* is that no similar preemption of state law exists under the NLRA. *See id.*

at 939, 102 S.Ct. at 2755, 73 L.Ed.2d at 497 (state action inquiry fact-bound). Because section 8(a)(3) of the NLRA at most merely authorizes the use of agency shop fees, we do not find the direct involvement of the federal government in the agency shop clause that was present in the union shop clause in *Hanson.* We add in passing that the decisions in *Street* and *Allen* shed no further light on the state action question, since the Court based its decisions in those cases on an interpretation of the RLA, not the Constitution.

More troubling is the Court's decision in *Abood.* In that case the Court stated that "differences between public- and private-sector bargaining simply do not translate into differences in First Amendment rights." 431 U.S. at 232, 97 S.Ct. at 718. Appellee urges us to adopt the full sweep of that dictum from *Abood* and apply the first amendment full force to the UAW's eligibility rules for strike benefits. Brief for Appellee at 14. We decline that invitation for several reasons. First, the Court never faced the issue of state action in *Abood,* since the very fact that a governmental entity was the plaintiffs' employer removed the question of state action from the controversy. *See Abood,* 431 U.S. at 226 n. 23, 97 S.Ct. at 715 n. 23. This is especially significant, for the Court has very recently reaffirmed the importance of the state action requirement. *See Blum v. Yaretsky,* 457 U.S. 991, 1003–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534, 545–46 (1982). While applying the reasoning used in *Hanson* and *Street,* the Court in *Abood* noted that those cases were premised on the RLA and the preemption of state law, pointing out at the same time that there was no similar provision in the NLRA. *Abood,* 431 U.S. at 218 n. 12, 97 S.Ct. at 1790 n. 12. Consistent with that distinction, the Court in *Abood* drew careful parallels between the contested Michigan law and the RLA. *Id.* at 223–24, 97 S.Ct. at 1793. In addition, though the Court has not decided the issue of state action under section 8(a)(3) of the NLRA, it has stated on other occasions that union rules governed

by the NLRA do not involve state action.[7] In sum, we read *Abood* as leaving open the question of state action under section 8(a)(3) of the NLRA, compelling us to conduct our own inquiry to determine whether the UAW's eligibility rules justify attributing them to the state.

No succinct summary exists of what constitutes state action for purposes of applying constitutional safeguards. Each case must be decided on its own, for " '[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.' " *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972) (quoting *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)). In previous cases a two-part analysis has been employed to determine whether private conduct should be attributed to the state. *See Lugar v. Edmondson Oil Co.,* 457 U.S. at 937, 102 S.Ct. at 2754, 73 L.Ed.2d at 495. The first part of this analysis looks to whether the alleged deprivation of constitutional rights is caused by "the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Id., see, e.g., North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 602–03, 95 S.Ct. 719, 720–21, 42 L.Ed.2d 751 (1975) (pre-judgment garnishment); *Fuentes v. Shevin,* 407 U.S. 67, 73–74, 92 S.Ct. 1983, 1990–91, 32 L.Ed.2d 556 (1972) (pre-judgment attachment). The second part of the analysis determines whether the person responsible for the deprivation may be held to be a state actor. *Lugar,* 457 U.S. at 937, 102

S.Ct. at 2754, 73 L.Ed.2d at 495. For example, the conduct of a private party has been attributed to the state because the private party performed what was traditionally an exclusive public function, *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); the private party acted in concert with the state, *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2756–57, 73 L.Ed.2d at 498; the private conduct was compelled by state law, *Adickes v. H.S. Kress & Co.,* 398 U.S. 144, 170–71, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970); or because there is some other nexus between the private party and the state such that the conduct should be attributed to the state, *see Jackson v. Metropolitan Edison, Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

In employing the two-part test outlined in *Lugar,* we must first determine whether the agency shop clause and the attendant restrictions in strike benefits funded in part by those agency fees constitute an exercise of "some right or privilege created by the state or by a rule of conduct imposed by the state, or by one for whom the state is responsible." *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754, 73 L.Ed.2d at 495.[8] In no sense is the agency shop clause compelled by federal law. Appellee cites no law, and our review of the NLRA fails to disclose any federal law, that forces the union and the company to adopt that provision as part of their labor contract. We are left with the question whether the authorization provided the agency shop clause by section 8(a)(3) of the NLRA makes the clause an exercise of a right or privilege created by the state or one for whom the state is responsible. We conclude that it does not.

**7.** *See United Steelworkers v. Sadlowski,* 457 U.S. 102, 121 n. 16, 102 S.Ct. 2339, 2350 n. 16, 72 L.Ed.2d 707, 721 n. 16 (1982); *United Steelworkers v. Weber,* 443 U.S. 193, 200, 99 S.Ct. 2721, 2725, 61 L.Ed.2d 480 (1979); *American Communications Ass'n v. Douds,* 339 U.S. 382, 402, 70 S.Ct. 674, 685, 94 L.Ed. 925 (1950).

**8.** There may be some uncertainty regarding the Court's reference in *Lugar* to a rule of conduct imposed by one for whom the state is responsible. In discussing the two-part test for state action, the *Lugar* opinion suggests that this

reference is to state officials or employees, *i.e.,* persons whose actions are directly attributable to the state, since they act expressly on its behalf. Although it is arguable that a private individual may be "a person for whom the state is responsible," the Court discussed the conduct of purely private parties under the second part of the *Lugar* test. *See Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754, 73 L.Ed.2d at 495–96 (discussing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).

The district court held the agency shop clause to be state action because such clauses are "expressly authorized" by Congress, and consequently, the use of such fees was subject to constitutional scrutiny. *Kolinske v. Lubbers,* 516 F.Supp. at 1179–80. But it is well settled that a state's mere authorization of private conduct does not justify a finding of state action. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534, 547 (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 354, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974). While the NLRA provides a framework to assist employees to organize and bargain collectively with their employers, the NLRA is neutral with respect to the content of particular agreements. *See* NLRA § 8(d), 29 U.S.C. § 158(d); *Local 24, International Brotherhood of Teamsters v. Oliver,* 358 U.S. 283, 294–95, 79 S.Ct. 297, 303–04, 3 L.Ed.2d 312 (1959). The NLRA does not mandate the existence or content of, for example, seniority clauses, work rules, staffing requirements, or union security provisions like agency shop clauses or mandatory payroll deductions for union dues. Even though federal law provides an encompassing umbrella of regulation, the parties, like any two parties to a private contract, were still free to adopt or reject an agency shop clause with or without government approval. Thus, the authorization for agency shop clauses provided by NLRA section 8(a)(3) does not transform agency shop clauses into a right or privilege created by the state or one for whom the state is responsible. *Cf. Franz v. United States,* 707 F.2d 582 at 593 (D.C.Cir.1983) (state action present because federal Witness Protection Program enabled participant to violate state law-mandated custody arrangements).

We are also guided to this conclusion by the Supreme Court's decision in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In that case a public utility was granted the exclusive right to provide electricity to customers within the franchise area. Although this governmental grant of monopoly power entailed extensive regulation, the Court nevertheless held that the acts of the utility did not constitute state action. *See id.* at 358, 95 S.Ct. at 457. Similarly, the NLRA grants unions something of an exclusive franchise through majority representation. Nevertheless, the Court in *Jackson* found no state action in the fact that the utility operated pursuant to a government franchise, a conclusion that we also reach in this case. We simply find no direct governmental influence in the decision by two private parties, the UAW and the McLaughlin Company, to adopt an agency shop clause. *See Jackson,* 419 U.S. at 357, 95 S.Ct. at 456; *cf. Oliphant v. Brotherhood of Locomotive Firemen & Enginemen,* 262 F.2d 359, 363 (6th Cir.1958) (membership rules of union not state action), *cert. denied,* 359 U.S. 935, 79 S.Ct. 648, 3 L.Ed.2d 636 (1959).

Even if we were to assume that the authorization provided by NLRA section 8(a)(3) makes the contested clause an exercise of a governmental right or privilege, the second part of the two-part test outlined in *Lugar* is not satisfied. None of the traditional indicia used to attribute private conduct to the state are present in this case. For example, state action has previously been imputed to private parties performing what traditionally were thought of as exclusively public functions. *See, e.g., Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Yet, nothing in the history of labor union affairs indicates that collective bargaining has been the exclusive province of the state. Another factor used to attribute private conduct to the state is the so-called state compulsion test, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), which examines private conduct compelled by express legal sanctions or by state-enforced custom. *Id.* at 170–71, 90 S.Ct. at 1615. As has been noted earlier, *supra* pp. 477–478, no state or federal law compelled the adoption of the agency shop clause at issue here.

A line of cases also exists which attributes private conduct to the state if the private party acts jointly with the state.

*See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The decisive factor in this case was whether the state was directly involved in the procedure by which a private creditor protected its interest in a debtor's property. State action was found in *Lugar* because a clerk of a state district court assisted the creditor in obtaining prejudgment attachment of the debtor's property. *See Lugar,* 457 U.S. at 924, 102 S.Ct. at 2747–48, 2757, 73 L.Ed.2d at 487, 498. But in another case involving a different type of creditors' remedy, no state action was found even though the warehouseman threatened to sell the property without prior court approval to recover unpaid storage fees. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Although state law authorized the lienor to enforce its interest through self-help, the Court held that no state action was present because no state officials were directly involved. *Id.* at 157, 98 S.Ct. at 1733. Similarly, this case shows no direct governmental involvement in either the parties' adoption of or their continued adherence to the agency shop clause. Consequently, we conclude that the joint conduct test for state action is not satisfied.

The search for the presence of the state does not stop, however, with only a comparative analysis of factors found determinative of the state action question in other cases. Very simply, the state may otherwise be so involved in the conduct of the UAW's affairs that the agency shop clause should be attributed to the government. Although appellee argues that the authorization of agency shop clauses provided by section 8(a)(3) of the NLRA justifies holding the UAW accountable as a state actor, Brief for Appellee at 7–9, we have already determined that the authorization provided the agency shop clause by federal law is an insufficient reason for finding state action. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974); *cf. Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 178–79, 92 S.Ct. 1965, 1974, 32 L.Ed.2d 627 (1972) (state required adherence to private club by-laws requiring racial discrimination deemed state action). Appellee also asserts that extensive federal government regulation of the UAW also suffices to establish the requisite nexus between the UAW and the government. Brief for Appellee at 6–9. But our review of the most recent case law from the Supreme Court on state action convinces us that extensive federal regulation of labor union affairs does not transform the UAW's agency shop clause and its attendant strike eligibility rules into governmental acts.

In a pair of cases decided the same day, *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), and *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court confronted situations involving extensive state regulation of the affairs of two private entities, a nursing home and a private school. In *Blum* the Court held that state action was not present in a nursing home's decision to discharge a Medicaid patient or transfer the patient to a lower level of health care. *Id.* at 1012, 102 S.Ct. at 2790, 73 L.Ed.2d at 551. The Court reached this finding even though the state extensively regulated the services provided by the nursing home and required the patient's physician to certify that certain services were medically necessary before the state would pay for the services. 457 U.S. at 1006, 102 S.Ct. at 2786–87, 73 L.Ed.2d at 547.

In *Rendell-Baker* the Court also rejected the argument that extensive government regulation of private activity made the private party the state's alter-ego for state action purposes. Because the private school in *Rendell-Baker* offered an alternative program for problem students referred to it by parents and public school authorities, more than 90 percent of school funds came from the state, and extensive state regulations controlled a wide range of school activities. 457 U.S. at 832, 102 S.Ct. at 2767, 73 L.Ed.2d at 422. Rendell-Baker was one of several private school employees who sued their former employer for violating their first amendment rights by discharging them for criticizing administration policy.

The Court held that the decision to discharge the employees, though acquiesced in by state officials who continued to fund school programs, was still the act of a private party beyond the pale of constitutional protection. 457 U.S. 841, 102 S.Ct. at 2772, 73 L.Ed.2d at 429.

Our reading of these two cases reveals that the requisite nexus between the conduct of a private party and the state is lacking in the present case. Central to the Court's reasoning in *Blum* and *Rendell-Baker* was the interposition of the independent judgment of a private party between the act that allegedly resulted in a constitutional deprivation and the decision of the state to accept that decision and continue funding the private activities. *See Blum,* 457 U.S. at 1008, 102 S.Ct. at 2788, 73 L.Ed.2d at 549; *Rendell-Baker,* 457 U.S. at 841, 102 S.Ct. at 2772, 73 L.Ed.2d at 428. In each case it was the conduct of a private party exercising independent judgment that yielded the contested result. The decision of the UAW and the McLaughlin Company to adopt the agency shop clause accords with this key aspect of *Blum* and *Rendell-Baker.*

Finally, appellee tenders the argument that the agency shop clause is attributable to the state because the force of the government lies behind the agreement in the power of the federal government to enforce compliance with the agreement. Brief for Appellee at 12–13. As primary authority for this argument appellee cites *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), in which the Court held that state action was present in the actions of a state court to enforce a racially restrictive covenant on behalf of a third-party landowner to prevent a sale between a willing vendor and vendee. While that holding of *Shelley* is still good law, it has no bearing on this case. The state court in *Shelley* intervened to enforce that agreement against a party unwilling to abide by its terms. In contrast, this case presents only the execution and willing observance of a private agreement, the terms of which were never mandated or enforced by the government. No state action is presented in such circumstances. *See United Steelworkers v. Weber,* 443 U.S. 193, 200, 99 S.Ct. 2721, 2725, 61 L.Ed.2d 480 (1979) (no state action present in private affirmative action plan); *Black v. Cutter Laboratories,* 351 U.S. 292, 298–99, 76 S.Ct. 824, 827–28, 100 L.Ed. 1188 (1956) (no federal question presented in whether "just cause" provision in union contract permitted discharging employee for membership in Communist party). Indeed, appellee seems to concede as much. *See* Brief for Appellee at 18.

This case presents simply the decision of two private parties to incorporate an agency shop clause as part of a privately negotiated and privately enforced collective bargaining agreement. To be sure, federal law permits the UAW to negotiate agreements with private parties authorizing the deduction of agency fees. It is also true that labor relations are extensively regulated by the federal government. Yet, federal law goes no further than to authorize the deduction of agency fees and does not enunciate an affirmative policy that compels use of such a clause. Thus, the decision to adopt an agency shop clause or condition access to strike benefits is not a governmental act. Without the requisite state action, appellee's first amendment claim must fall.[9]

---

**9.** We recognize that two other circuits which have faced this issue have reached an opposite conclusion. The Ninth Circuit held the use of agency fees collected by a union to be subject to constitutional scrutiny, following the reasoning of *Railway Employes' Department v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), and its line of cases. *Seay v. McDonnell Douglas Corp.,* 427 F.2d 996, 1003–04 (9th Cir.1970). The Ninth Circuit offered no analysis of the state action question, however, apparently assuming that it was controlled by *Hanson.* A panel of the First Circuit also considered a union shop clause requiring union membership as a condition of employment to be state action. *Linscott v. Miller Falls Co.,* 440 F.2d 14, 16–17 (1st Cir.1971). On the merits, however, the First Circuit in *Linscott* upheld the union shop clause, holding that the governmental interests in labor peace served by the union shop clause outweighed an employee's religious objection to forced union membership. *Id.* at 17–18.

The question of state action presented by this case is an open one in this circuit. We note

## III.

The district court also awarded judgment for appellee on the ground that the union's eligibility requirements for strike benefits violated the UAW's duty of fair representation owed appellee. A union's duty of fair representation arises out of the exclusive representational status granted a union by section 9(a) of the NLRA, 29 U.S.C. § 159(a) (1976). *See Baker v. Newspaper & Graphic Communications Union Local 6,* 628 F.2d 156, 165 (D.C. Cir.1980). This section has been interpreted to mean that the union must "serve the interests of all [employees] without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967) (citing *Humphrey v. Moore,* 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964)). The district court premised its finding that the union's duty of fair representation applied to appellee on the very fact that he was a non-member. Since non-members were not allowed to participate in the strike vote, the district court held that it was inherently discriminatory to force non-members to participate in strike activities to obtain strike benefits. *Kolinske v. UAW,* 530 F.Supp. at 735. The district court also compared the strike benefits for which appellee was eligible to unemployment insurance; that is, the strike benefits were an entitlement which appellee should have received "to compensate him for contingencies beyond his control." *Id.*

We reverse the district court's holding on this point because we find that the scope of the UAW's obligations toward Kolinske under its duty of fair representation does not extend to its eligibility rules for strike benefits. Arising as it does out of a union's privilege under section 9(a) of the NLRA to serve as the employee's exclu-

sive representative, the duty of fair representation is co-extensive only with the power of exclusive representation. As we have earlier noted, "a union ... can be held to represent employees *unfairly* only in regard to those matters as to which it represents them *at all*—namely, 'rates of pay, wages, hours ..., or other conditions of employment.'" *International Brotherhood of Teamsters, Local No. 310 v. NLRB,* 587 F.2d 1176, 1183 (D.C.Cir.1978) (quoting 29 U.S.C. § 159(a) (1970) (emphasis in original) (footnote omitted); *see also Miranda Fuel Co., Inc.,* 140 N.L.R.B. 181, 185 (1962) (duty of fair representation extends to matters affecting employment). In other words, the duty of fair representation extends only to matters involving an employee's dealings with his employer and ordinarily does not affect an employee's relationship with the union structure. *Bass v. International Brotherhood of Boilermakers,* 630 F.2d 1058 (5th Cir.1980).

The district court's holding that the UAW eligibility rules affect appellee's employment does not accord with the proper interpretation that should be given that element of a breach of the duty of fair representation. Granted, in some broad, theoretical sense participation in a strike is a matter that affects employment, since a strike is normally called only to advance employees' interests with respect to their jobs. But the NLRB and courts have usually excluded internal union affairs from being within "a matter[] affecting employment," unless the internal union matter has some "substantial impact" on an employee's relationship with his employer. *International Brotherhood of Teamsters, Local No. 310 v. NLRB,* 587 F.2d 1176, 1183 & n. 31 (D.C.Cir.1978) (quoting *Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local 14,* 453 F.2d 1018, 1024 (9th Cir.1972); *United Food & Commercial Workers International Union,* 245 N.L.R.B.

---

that one other circuit is in accord with our analysis. *See Reid v. McDonnell Douglas Corp.,* 443 F.2d 408, 410–11 (10th Cir.1971). In addition, another panel of the First Circuit recently held a union loyalty oath, imposed as a condition of union membership, to be purely a

private act not subject to constitutional scrutiny. *Hovan v. United Brotherhood of Carpenters and Joiners of America,* 704 F.2d 641 at 645 (1st Cir.1983). *See also Linscott,* 440 F.2d at 19–20 (Coffin, J.) (concurring because no state action involved).

1035, 1039 n. 24 (1979). The union's strike eligibility rules had no direct or substantial relationship to appellee's dealing with his former employer, nor does the record show that the employer ever had any responsibility or right to interpret or enforce the UAW strike benefit rules. Instead, strike benefits were developed by the union solely as an ancillary, supportive tool of collective bargaining, *see* Affidavit of Douglas Caravaggio, *supra* at 4–5, Record at 81–82, and were made available to any employee, whether member or non-member, who contributed to the fund and in some way manifested a willingness to help the union's collective bargaining activities. *See* UAW Const. of 1978, art. 6, § 20, Record at 95; Summary of UAW Strike Assistance Rules, pt. 5, Record at 84. Moreover, it does not matter that appellee was not a member of the union and could not vote to go out on strike, because the eligibility rules for strike benefits relate only to the means by which employees may assist each other and their collective bargaining representative during a strike. *See American Postal Workers Union, Local 6885 v. American Postal Workers Union,* 665 F.2d 1096, 1105 n. 20 (D.C.Cir. 1981); *International Brotherhood of Teamsters, Local No. 310 v. NLRB,* 587 F.2d 1176, 1182 (D.C.Cir.1978); *cf. NLRB v. Wooster Division of Borg-Warner Corp.,* 356 U.S. 342, 349–50, 78 S.Ct. 718, 722–23, 2 L.Ed.2d 823 (1958) (advisory "ballot" contract clause affects only employees and collective bargaining representative). Thus, appellee's dispute with the UAW should be treated like an internal union matter, notwithstanding his non-member status. Finally, the fees used to support strike benefits were co-mingled in a common fund managed by the international union. Eligibility for benefits was conditioned in many ways, and payment was based on family size and length of a strike. No one was automatically "entitled" to receive strike benefits.

Since the eligibility rules are purely an internal union matter without a substantial impact on appellee's external relations with his employer, his complaint does not allege a wrong by the union proscribed by the duty of fair representation. Consequently, we reverse the district court's holding in this regard as well.

### IV.

We conclude by noting that, notwithstanding the institutional importance of labor unions, it would be unwise to elevate all union activities to constitutional significance. As our counterparts on the First Circuit recently observed, a finding of governmental action in these circumstances would mean that unions must necessarily be treated as local governmental units or agencies in nearly all their activities. *Hovan v. United Brotherhood of Carpenters & Joiners,* 704 F.2d 641, 642 (1st Cir.1983). There is little to recommend such a result. Congress not only has taken an active role in balancing the competing interests of individual employees and their respective bargaining representatives, but the legislative branch is also better positioned to reconcile competing policies in this area and to preserve a vital element of regulatory flexibility. *See Hovan,* 704 F.2d at 643; Wellington, *The Constitution, the Labor Union, and "Governmental Action,"* 70 Yale L.J. 345, 366 (1961). Moreover, the imposition of constitutional restrictions on union activity ignores the special role unions play in our economic environment, a role that Congress has supported, *see* Wagner Act § 1, 29 U.S.C. § 151 (1976), and which has been judicially recognized. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 33, 42, 57 S.Ct. 615, 622, 626, 81 L.Ed. 893 (1937). Accordingly, the judgment of the district court for appellee is reversed and the case remanded with instructions to dismiss his complaint.

*It is so ordered.*